| |
|---|
| Debtor Name: <u>TD&H, Inc.</u> |
| United State Bankruptcy Court for the: <u>Middle</u>          District of <u>North Carolina</u> |
| Case Number:   <u>24-10392</u> |

☒  Check of this is an amended filing

## Official Form 425A

# AMENDED Plan of Reorganization for Small Business Under Chapter 11

**02/20**

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

On June 25, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, electing subchapter V status, of the United States Bankruptcy Code in this Court. The Debtor continues in possession of its assets and the management of its business as a debtor in possession.

TD&H, Inc.("Debtor" or "TD&H") was established in 2019 by Huntley Nero ("Mr. Nero") and Travis High ("Mr. High") when Mr. Nero and Mr. High were presented with an opportunity to obtain a contract with FedEx for the pickup and delivery of FedEx packages. The contract provided Debtor with five routes in the Greensboro area, eventually increasing to seven by the end of 2021.  In 2021 Debtor obtained an additional FedEx contract for eleven routes in the Greenville, North Carolina area.  Consequently, Debtor employed approximately thirty individuals and was operating approximately twenty trucks to service its contracts.  In 2022, FedEx offered Debtor seventeen additional routes in Georgia.  As a result, Debtor purchased twenty-one additional trucks and five semi-trucks to service the newly obtained routes.

Debtor was highly profitable until late 2022 when the trucking industry took a nose-dive.  Market rates per mile were essentially cut in half, significantly decreasing Debtor's profitability.  This impacted Debtor tremendously as it had just taken on substantial secured debt for the newly purchased trucks.

In early 2023, Mr. High began a new business venture, purchasing a wedding venue.  In an effort to obtain capital, Mr. High, through the Debtor, obtained several merchant capital advance loans.  Mr. Nero was not privy to the details of said loans regarding the amount borrowed or the unconscionable repayment terms.  The merchant capital advance loan repayments crippled the Debtor's cash flow, which resulted in the loss of lucrative FedEx contracts and the filing of this bankruptcy.  The loss of cash flow hindered the Debtor's ability to address safety and maintenance concerns raised by FedEx and per the FedEx contracts.  Debtor has lost two of its FedEx contracts since January 2024.

Debtor, effective September 27, 2024, has one FedEx contract servicing the Greensboro area.  Debtor is typically compensated a set amount per week per contract, a set amount per stop and per package, and a fuel surcharge.  This payment scheme is modified if the Debtor is in a contract renewal process.  It should be noted that on Petition Date Debtor was servicing two FedEx contracts; however, Debtor lost one contract, effective post-petition, due to safety and maintenance issues.  Debtor was made aware that it would lose said contract pre-petition.  The Debtor services 8 routes pursuant to its current contract with FedEx.  Each route, if sold on the open market to a FedEx approved buyer, would bring approximately $5,000.00 per route or $40,000.00 for the entire contract.

Debtor currently leases twelve trucks to M&A Logistics, LLC ("M&A"), an entity solely owned by Mr. Nero.  The Plan seeks to assume and approve a written lease between M&A and Debtor for the use of said vehicles.  A copy of the proposed Truck Lease is attached to this Plan as Exhibit D.

Debtor's assets were appraised pre-petition.  While the schedules reflect "liquidation value" the value of Debtor's assets were valued as one could expect to receive in a public sale process that is professionally managed and advertised in a commercially reasonable manner by a seller obligated to sell over a two to four-month period.  Debtor has not purchased any major equipment or inventory since Petition Date.  Debtor asserts that the values reflected on the Petition, given the nature of the collateral and the day-to-day wear and tear, are the current, true fair market value of the Debtor's assets.

Debtor Name: TD&H, Inc.

Case No.: 24-10392

Debtor's equipment, accounts, cash and general intangibles are collateral for debt owed to Truist, Vox Funding, LLC ("Vox"), Knightsbridge Funding, Inc. ("Knightsbridge"), and LG Funding, LLC ("LG"), in that order of priority.

The total accounts receivable as of September 23, 2024 is $68,000.00 ("AR"). The Debtor believes all AR is collectable. Debtor's bank account, as of September 23, 2024, totals $37,700.00. The Debtor's current FedEx contract has a value of $40,000.00.

**Travis High Claim**

Debtor asserts that it has a claim against Mr. High in the amount of approximately $785,000.00. Mr. High obtained two merchant capital advance loans in the combined amount of $436,201.00 in December 2022, and withdrew $419,600.00 for his own personal benefit. Mr. High deposited his personal funds into the Debtor's accounts to cover payments to the MCAs, until he no longer had the financial ability to do so. Mr. High took out several other MCAs in order to cover the initial MCA loans. The remaining balances owed to the MCAs totals approximately $297,000.00.

Mr. High used said funds to assist with the purchase of a wedding venue that is now owned by an LLC, of which Mr. High and his wife are the sole member-managers. The wedding venue property is currently listed for sale for a list price of $600,000.00. There is a lien encumbering the property with an approximate balance of $250,000.00. The Trustee has assisted to facilitate an agreement with Mr. High to settle the claims between Debtor and Mr. High, the terms of which are being finalized. The proposal is as follows:

- Debtor shall receive a Deed of Trust in its favor encumbering the wedding venue property in the amount of $785,000.00.
- Debtor shall receive all net proceeds of the sale of the wedding venue at closing.
- Mr. High shall relinquish his equity interest in TD&H.
- Mr. High shall receive a release from TD&H.

It is anticipated that the net funds of the sale of the wedding venue that will be paid to Debtor will be approximately $250,000.00. It should be noted that Mr. High has provided to the Trustee with a personal financial statement which indicates that, but for the wedding venue property, Mr. High is judgment proof.

In the event that a formal agreement has not been finalized on or before December 15, 2024, Debtor shall pursue an action against Mr. High to recover the company funds converted to his personal use. Funds received from Mr. High shall be utilized for its future, ongoing operations, a portion of which shall be distributed to Class 11 General Unsecured Creditors.

**11 U.S.C. §§ 547 and 548 Actions**

Debtor shall pursue §§ 547 and 548 actions against Knightsbridge Funding, Inc and LG Funding, LLC on or before February 1, 2025, if such claims are not resolved prior to said date. Any funds recovered shall be paid to the Class 11 General Unsecured Creditors, less the costs incurred to recover said funds.

This Plan reflects the Debtor's attempt to achieve a consensual plan of reorganization. The Debtor projects that the Plan will achieve a 25% dividend to general unsecured creditors based on the liquidation value of the estate and Debtor's disposable income. General unsecured creditors shall also receive the net proceeds of any §§ 547 and 548 actions.

The Plan shall be funded by cash flow from future operations and the recovery on the claim against Mr. High. Attached as Exhibit A is the Debtor's monthly cash flow projections for operations for the year beginning December 2024 through November 2025. Attached as Exhibit B is a yearly cash flow projections for December 2024 through November 2029 of the Plan. The cash flow projections as reflected in each Exhibit is based upon the Debtor's projected operations based on normal operations. Note that the projections do not account for the recovery of the §§ 547 and 548 claims as the timing and amount is unknown as of the date of this Plan.

Debtor Name: <u>TD&H, Inc.</u>                                                                                    Case No.: <u>24-10392</u>

## B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as <u>Exhibit C</u> and shows that in a chapter 7 proceeding unsecured creditors would be expected to receive a 1% distribution on their claim.

## C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as <u>Exhibits A and B</u>.

The Plan Proponent's financial projections show that the Debtor will not have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2).

The final Plan payment is expected to be paid on November 15, 2029.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1: Summary

This Plan of Reorganization (the Plan) under chapter 11 of the Bankruptcy Code (the Code) proposes to pay creditors of TD&H, Inc. (the Debtor) from cash flow from ongoing business operations.

This Plan provides for:

| | |
|---|---|
| 1 | class of priority claims; |
| 9 | classes of secured claims; |
| 1 | class of general unsecured claims; and |
| 1 | class of equity security holders. |

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at no less than approximately one cent on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| 2.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
|---|---|---|
| 2.02 | **Administrative expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Trustee has agreed to be paid in full over a period of 3 months from the Effective Date of the Plan, so long as all such fees are paid in full prior to any distribution to Class 11 General Unsecured Creditors. Debtor's counsel will be paid as funds are available but at a rate of no less than $1,000.00 per month, so long as all fees are paid in full prior to any distribution to Class 11 General Unsecured Creditors. |
| 2.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid in full on the Effective Date of the Plan. |
| 2.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |

Debtor Name: TD&H, Inc.                                                                                   Case No.: 24-10392

2.05   **Prospective quarterly fees**       All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

## Article 3: Classification of Claims and Interests

3.01   **Class 1** ..............................   All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

3.02   **Class 2** .........................   The claim of **Truist Bank-0001** to the extent allowed as a secured claim under § 506 of the code.

3.03   **Class 3** .............................   The claim of **Truist Bank-0005** to the extent allowed as a secured claim under § 506 of the code.

3.04   **Class 4** ...............................   The claim of **Vox Funding** to the extent allowed as a secured claim under § 506 of the code.

3.05   **Class 5** ...............................   The claim of **Knightsbridge Funding, Inc.** to the extent allowed as a secured claim under § 506 of the code.

3.06   **Class 6** ...............................   The claim of **LG Funding, LLC** to the extent allowed as a secured claim under § 506 of the code.

3.07   **Class 7** ...............................   The claim of **First Citizens** to the extent allowed as a secured claim under § 506 of the code.

3.08   **Class 8** ...............................   The claim of **Pinnacle Bank** to the extent allowed as a secured claim under § 506 of the code.

3.09   **Class 9** ...............................   The claim of **Truist-Retained Trucks** to the extent allowed as a secured claim under § 506 of the code.

3.10   **Class 10** ............................   The claim of **Truist-Surrendered Trucks** to the extent allowed as a secured claim under § 506 of the code.

3.11   **Class 11** ............................   All non-priority unsecured claims allowed under § 502 of the Code.

3.24   **Class 12** ............................   Equity interests of the Debtor.

Debtor Name: TD&H, Inc. _____     Case No.: 24-10392

| **Article 4: Treatment of Claims and Interests Under the Plan** |
|---|

**4.01   Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority claims excluding those in Article 3 | ☐ Impaired<br>☒ Unimpaired | No priority claims are anticipated. To the extent there are any allowed Priority claims they shall be paid in full on the effective date of the Plan. |
| Class 2– Secured claim of Truist Bank-0001 ("Truist-0001") | ☒ Impaired<br>☐ Unimpaired | Truist-0001 filed claim 22 evidencing a first priority lien pursuant to a promissory note, security agreement and UCC-1 Financing Statement dated October 25, 2019 ("Truist Loan Documents") in the amount of $105,414.80. The obligation owed to Truist-0001 by the Debtor under the Truist Loan Documents are secured by Debtor's inventory, equipment, accounts, and general intangibles.<br><br>Truist-001 currently has a first priority lien on the following collateral, with the following approximate values as of September 23, 2024:<br>--accounts/cash:  $37,000.00<br>--AR:  $68,000.00<br>--FedEx contract:  $40,000.00<br><br>Truist-0001 shall have an Allowed Secured Claim in the amount of $105,414.80 which shall be amortized over 60 months at 10.50% interest per annum and paid in equal monthly installments of $2,266.00. Monthly installments shall be on the 15th day of each month, with the first monthly installment due on December 15, 2024.<br><br>Truist-0001 shall retain the same security interest with the same priority as it held prepetition. Debtor shall maintain insurance on Truist-0001's collateral.<br><br>The balance of Truist-0001's claim, if any, shall be treated as a Class 11 General Unsecured Claim. |
| Class 3– Secured claim of Truist Bank-0005 ("Truist-0005") | ☒ Impaired<br>☐ Unimpaired | Truist-0005 filed claim 24 evidencing a second priority lien pursuant to a Promissory Note, Security Agreement and UCC-1 Financing Statements dated June 16, 2021, respectively, in the secured amount of $116,254.18.  Truist-0005 holds a second priority lien on Debtor's inventory, equipment, accounts and general intangibles.<br><br>In light of Truist-0005's second priority lien position and the value of collateral that secures Debtor's obligation to Truist-0005, Truist-0005 shall have an Allowed Secured Claim in the amount of $39,585.20 which shall be amortized over 60 months at 10.50% interest per annum and paid in equal monthly installments of $851.00. Monthly installments shall be on the 15th day of each month, with the first monthly installment due on December 15, 2024.<br><br>Truist-0005 shall retain the same security interest with the same priority as it held prepetition. Debtor shall maintain insurance on Truist-0005's collateral.<br><br>The balance of Truist-0005's claim, if any, shall be treated as a Class 11 General Unsecured Claim. |
| Class 4–Secured claim of Vox Funding, LLC ("Vox") | ☒ Impaired<br>☐ Unimpaired | Vox filed claim 21 evidencing a third priority lien pursuant to a Promissory Note, Security Agreement and UCC-1 Financing Statements dated June 5, 2023, respectively, in the secured amount of $158,050.00. Vox holds a second priority lien on Debtor's inventory, equipment, accounts and general intangibles.<br><br>In light of Vox's third priority lien position and the value of collateral that secures Debtor's obligation to Vox, Vox's claim is wholly unsecured.  As such, Vox's claim shall be treated as a Class 11 - General Unsecured Claim.<br><br>Vox shall terminate its UCC-1 Financing statements within 30 days of the Effective Date of the Plan.  If Vox fails to terminate said UCC-1s within the time prescribed, Debtor has the authority to file said termination pursuant to the Order confirming the Plan. |

Debtor Name: TD&H, Inc.                                                                      Case No.: 24-10392

| | | |
|---|---|---|
| Class 5– Secured claim of Knightsbridge Funding, Inc. ("Knightsbridge") | ☒ Impaired<br>☐ Unimpaired | Knightsbridge has a fourth priority lien pursuant to a Promissory Note, Security Agreement and UCC-1 Financing Statements dated on or about December 6, 2023, respectively. Knightsbridge holds a fourth priority lien on Debtor's inventory, equipment, accounts and general intangibles. The balance owed Knightsbridge is approximately $70,000.00<br><br>In light of Knightsbridge's fourth priority lien position and the value of collateral that secures Debtor's obligation to Knightsbridge, Knightsbride's claim is wholly unsecured. As such, Knightsbridge's claim shall be treated as a Class 11 - General Unsecured Claim.<br><br>Knightsbridge shall terminate its UCC-1 Financing statements within 30 days of the Effective Date of the Plan. If Knightsbride fails to terminate said UCC-1s within the time prescribed, Debtor has the authority to file said termination pursuant to the Order confirming the Plan. |
| Class 6– Secured claim of LG Funding, LLC ("LG") | ☒ Impaired<br>☐ Unimpaired | LG filed claim 20 evidencing a fifth priority lien pursuant to a Promissory Note, Security Agreement and UCC-1 Financing Statements dated December 14, 2023, in the secured amount of $69,286.25. LG holds a fifth priority lien on Debtor's inventory, equipment, accounts and general intangibles.<br><br>In light of LG's fifth priority lien position and the value of collateral that secures Debtor's obligation to LG, LG's claim is wholly unsecured. As such, LG's claim shall be treated as a Class 11 - General Unsecured Claim.<br><br>LG shall terminate its UCC-1 Financing statements within 30 days of the Effective Date of the Plan. If LG fails to terminate said UCC-1s within the time prescribed, Debtor has the authority to file said termination pursuant to the Order confirming the Plan. |
| Class 7– Secured claim of First Citizens | ☒ Impaired<br>☐ Unimpaired | FC-6216 filed Claim 12 evidencing a first priority lien on a 2021 Ford 59 P1200 (VIN ending 5139), purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated October 28, 2011 in the secured amount of $38,021.98. The Petition Date value of the 2021 Ford 59 P1200 was $16,800.00.<br><br>FC-9711 filed Claim 15 evidencing a first priority lien on a 2021 Ford Super Duty (VIN ending 5101), purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated May 19, 2022 in the secured amount of $52,067.23. The Petition Date value of the 2021 Ford Super Duty was $22,400.00.<br><br>FC-9640 filed Claim 14 evidencing a first priority lien on a 2021 Ford Super Duty F59 (VIN ending 5081), purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated May 19, 2022 in the secured amount of $52,067.03. The Petition Date value of the 2021 Ford Super Duty F59 was $20,300.00.<br><br>FC-9727 filed Claim 11 evidencing a first priority lien on a 2021 Chevrolet G3500 (VIN ending 1108), purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated July 14, 2021 in the secured amount of $120,653.88. The Petition Date value of the 2021 Chevrolet G3500 was $20,300.00.<br><br>FC-2214 filed Claim 17 evidencing a first priority lien on a 2022 GMC 3500 12ft box truck (VIN ending 7224), purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated November 16, 2022 in the secured amount of $24,725.83. The Petition Date value of the 2022 GMC 3500 12ft box truck was $15,400.00.<br><br>FC-6617 filed Claim 13 evidencing a first priority lien on a 2020 Mercedes Sprinter 2500 (VIN ending 6901), purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated October 28, 2021 in the secured amount of $20,887.26. The Petition Date value of the 2020 Mercedes Sprinter 2500 was $14,000.00. |

Debtor Name: TD&H, Inc. _____   Case No.: 24-10392

---

FC shall have an Allowed Secured Claim in the amount of $109,200.00, plus interest from Petition Date, and shall be amortized over five (5) years, bearing interest at 10.50% per annum. Monthly payments shall be in the approximate amount of $2,348.00. Monthly payments shall commence on December 15, 2024 and shall be due on the 15th day of each month thereafter. Payments shall be disbursed by the Debtor.

FC shall retain the same security interest with the same priority as it held prepetition. Debtor shall maintain insurance on FC's collateral and FC shall be listed as loss payee.

The balance of FC's claim, if any, shall be treated as a Class 11 General Unsecured Claim. FC shall file a deficiency claim on or before February 1, 2025.

---

| Class 8– Secured claim of Pinnacle Bank ("Pinnacle") | ☒ Impaired<br>☐ Unimpaired | Pinnacle filed Claim 8 evidencing a first priority lien on two 2022 Ford E350 10 ft box trucks and 2022 Ford F59 P700, purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated October 10, 2023 in the secured amount of $90,474.65. The Petition Date value of the two 2022 Ford E350 10 ft box trucks and 2022 Ford F59 P700 was $51,800.00.<br><br>Pinnacle shall have an Allowed Secured Claim in the amount of $51,800.00, plus interest from Petition Date, and shall be amortized over five (5) years, bearing interest at 10.50% per annum. Monthly payments shall be in the approximate amount of $1,114.00. Monthly payments shall commence on November 15, 2024 and shall be due on the 15th day of each month thereafter. Payments shall be disbursed by the Debtor.<br><br>Pinnacle shall retain the same security interest with the same priority as it held prepetition. Debtor shall maintain insurance on Pinnacle's collateral and Pinnacle shall be listed as loss payee.<br><br>The balance of Pinnacle's claim, if any, shall be treated as a Class 11 General Unsecured Claim. Pinnacle shall file a deficiency claim on or before February 1, 2025. |
| Class 9– Secured claim of Truist Bank (Retained Trucks) | ☒ Impaired<br>☐ Unimpaired | Truist-0006 filed Claim 25 evidencing a first priority lien on seven 2021 Chevrolet 3500 16ft box trucks and two 2020 Chevrolet 3500 16ft box trucks, purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated July 9, 2021 in the secured amount of $279,765.21. The Petition Date value of the seven 2021 Chevrolet 3500 16 ft box trucks and 2020 Chevrolet 3500 16 ft box truck was $179,900.00.<br><br>Truist-0026 filed Claim 32 evidencing a first priority lien on four 2022 GMC 3500 12 ft box trucks, purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated November 30, 2022 in the secured amount of $144,217.98. The Petition Date value of the four 2022 GMC 3500 12 ft box trucks was $61,600.00.<br><br>Truist-0022 filed Claim 34 evidencing a first priority lien on three 2020 Ram Promaster 2500 high roof, purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated October 4, 2022 in the secured amount of $39,264.86. The Petition Date value of three 2020 Ram Promaster 2500 high roof was $44,100.00.<br><br>Truist-0030 filed Claim 33 evidencing a first priority lien on a 2016 Freightliner MT45 (VIN ending 7682), purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated September 29, 2023 in the secured amount of $24,940.62. The Petition Date value of the 2016 Freightliner MT45 was $14,000.00.<br><br>Truist-0024 filed Claim 31 evidencing a first priority lien on 2019 International LT625 (VIN ending 9093), purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated November 2, 2022 in the secured amount of $94,401.72. The Petition Date value of the 2019 International LT625 was $19,600.00. |

Debtor Name: TD&H, Inc.                                              Case No.: <u>24-10392</u>

| | | |
|---|---|---|
| | | Truist shall have an Allowed Secured Claim in the amount of $319,200.00, plus interest from Petition Date, and shall be amortized over five (5) years, bearing interest at 10.50% per annum. Monthly payments shall be in the approximate amount of $6,861.00. Monthly payments shall commence on December 15, 2024 and shall be due on the 15th day of each month thereafter. Payments shall be disbursed by the Debtor.<br><br>Truist shall retain the same security interest with the same priority as it held prepetition. Debtor shall maintain insurance on Truist's collateral and Truist shall be listed as loss payee.<br><br>The balance of Truist's claim, if any, shall be treated as a Class 11 General Unsecured Claim. Truist shall file a deficiency claim on or before February 1, 2025. |
| Class 10– Secured claim of Truist Bank (Surrendered Trucks) | ☒ Impaired<br>☐ Unimpaired | Truist-0017 filed Claim 30 evidencing a first priority lien on a 2019 International LT625 (VIN ending 8734), purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated August 31, 2022 in the secured amount of $90,980.93. The Petition Date value of the 2019 International LT625 was $21,000.00.<br><br>Truist-0012 filed Claim 29 evidencing a first priority lien on a 2019 International LT625 (VIN ending 8858), purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated August 31, 2022 in the secured amount of $90,860.67. The Petition Date value of the 2019 International LT625 was $12,600.00.<br><br>Truist-0010 filed Claim 27 evidencing a first priority lien on a 2015 utility trailer (VIN ending 6808), purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated June 24, 2022 in the secured amount of $29,707.33. The Petition Date value of the 2015 utility trailer was $7,000.00.<br><br>Truist-0014 filed Claim 28 evidencing a first priority lien on a 2019 International LT625 (VIN ending 4569), purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated August 31, 2022 in the secured amount of $94,537.32. The Petition Date value of the 2019 International LT625 was $24,500.00.<br><br>Truist-0008 filed Claim 26 evidencing a first priority lien on a 2019 International LT625 (VIN ending 9298), purchased and financed pursuant to a Promissory Note and Commercial Security Agreement dated June 24, 2022 in the secured amount of $89,902.96. The Petition Date value of the 2019 International LT625 was $21,000.00.<br><br>The Debtor intends to surrender the vehicles associated with Class 10. Any deficiency balance shall be treated as a Class 11 General Unsecured Claim. Truist shall file a deficiency claim on or before February 1, 2025. |
| Class 11– General Unsecured Claims | ☒ Impaired<br>☐ Unimpaired | The Debtor anticipates that the Allowed Claims of Class 11 General Unsecured Claims will total approximately $721,486.63, which includes the general unsecured claims of Truist, Vox, Knightsbridge, LG, Pinnacle and First Citizens.<br><br>Based on the liquidation value of the estate (see Exhibit C), the Debtor proposes to pay $6,000.00 to the Class 11 General Unsecured Claims. This payment is included in the distribution set forth below.<br><br>Debtor is required to pay to general unsecured claimants its Disposable Income, as defined by the Code, for no less than 3 years from the date that the first distribution is due under the Plan. Debtor's Disposable Income will rely heavily on the recovery from the claims against Mr. High. Assuming a $250,000.00 recovery, Exhibit B demonstrates that all but $175,000.00 of the recovery and income is reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, and operation of Debtor's business operations. |

Debtor Name: TD&H, Inc._____    Case No.: 24-10392

This demonstration however, assumes that Debtor retains $75,000.00 of the recovered funds. As such, the Allowed Claims of Class 11 General Unsecured Claims shall receive a pro rata share of the funds recovered from Mr. High, less $75,000.00, which is necessary to be expended for the payment of expenditures, necessary for the continuation, preservation and operation of Debtors' business operation. This amount represents Debtor's Disposable Income as defined by the Code. The payment to the Allowed Claims of Class 11 General Unsecured Claims shall be disbursed within 30 days of receipt and is anticipated to occur in or around June 2025.

In addition, Class 11 General Unsecured Claims shall receive any and all funds recovered from any §§ 547 and 548 actions, less the costs of recovery and shall be distributed on a pro rata basis to Class 11 General Unsecured Claims within 20 days of receipt of said funds.

| Class 12 - Equity security holders of the Debtor | ☒ Impaired<br>☐ Unimpaired | Huntley Nero shall retain all equity interests in the Debtor. Travis High shall relinquish his equity interest in the Debtor. |

## Article 5: Allowance and Disallowance of Claims

| 5.01 | **Allowed Claim** | Any Claim against the Debtor for which a Proof of Claim was filed on or before the date designated for such filing by the United States Bankruptcy Court as of the last day on which to file Claims in this proceeding, or which is listed in the Schedules filed by the Debtor (unless listed as unliquidated, disputed or contingent) and, in either case, to which no objection has been filed within the applicable period of limitation fixed by the United States Code, the Rules of Bankruptcy Procedure, or Order of this Court, unless the objection has been determined by Final Order or Judgment of the Court, or any applicable court, allowing such Claim. This definition shall include allowed secured claims and, to the extent authorized under the Code and approved by the Court, an allowed secured claim shall include 11 U.S.C. § 506(b) expenses. |
|---|---|---|
| 5.02 | **Disputed claim** | A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:<br><br>(i)   a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br><br>(ii)  no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.03 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.04 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

Debtor Name: TD&H, Inc. _____                Case No.: 24-10392

## Article 6: Provisions for Executory Contracts and Unexpired Leases

6.01 **Assumed executory contracts and unexpired eases**

(a) The Debtor assumes, to the extent necessary, the following executory contracts and unexpired leases as of the effective date:

- All insurance policies/contracts;
- Contract with Fedex;
- Chrysler Capital truck lease;
- Bush truck leases;
- Real property lease; and
- Truck lease with M&A Logistics, Inc. (copy of proposed lease attached as Exhibit D).

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

The Debtor will fund payments under the Plan from continued business operations. Payments to general unsecured creditors will be made from funds recovered from Mr. High, after the costs of administration associated with the recovery are paid.

Debtor Name: TD&H, Inc. _____     Case No.: 24-10392

## Article 8: General Provisions

| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. |
| --- | --- | --- |
| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of North Carolina govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 | **Corporate governance** | Pursuant to section 1123(a)(6) the Debtor is prohibited from issuing non-voting equity Securities. |
| 8.08 | **Retention of Jurisdiction** | Until the entry of a Final Decree, the Court shall retain jurisdiction to the extent necessary to implement the Plan; to hear and determine all claims against the Debtor; to hear, determine, and enforce all causes of action (including all causes of action under Chapter 5 of the Bankruptcy Code) arising in, arising under, or related to these cases and which may exist on behalf of the Debtor; to consider any sale of equity interests pursuant to the terms of this Plan; and, to confirm after notice and hearing (except as otherwise provided herein) any proposed compromise of any cause of action (including causes of action under Chapter 5 of the Bankruptcy Code).<br><br>The Debtor shall retain the sole and exclusive right to assert, commence, pursue, settle compromise, abandon, waive, or release any claim or cause of action which may exist on behalf of the Debtor (including causes of action under Chapter 5 of the Bankruptcy Code) which accrued and was asserted or capable of assertion by the Debtor as a debtor-in-possession as of the Petition Date and that is not otherwise released, settled, enjoined, or otherwise compromised by the terms of this Plan or the Confirmation Order. |

## Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i)   imposed by this Plan; or
(ii)  to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i)   on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192; or
(ii)  excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Debtor Name: TD&H, Inc._____    Case No.: 24-10392

| | **Article 10: Other Provisions** | |
|---|---|---|
| 10.01 | **Management of Reorganized Debtor** | TD&H, Inc. shall be managed by Huntly Nero shall be compensated commensurate with her duties, but no less than $4,250.00 per month. |
| 10.02 | **Sale of Assets** | The Debtor may in its sole business discretion, sell assets which are not needed in the business operations. |
| 10.03 | **Claims Objections** | The Debtor may file an objection to any claim within thirty (30) days after the Effective Date. The absence of an objection to a claim prior to the confirmation date, whether as to a scheduled or filed claim, shall not be deemed an acceptance of any claim nor a waiver of the right to object to any claim, and the holder of any such claim shall not be entitled to assert reliance upon any implied acceptance of such claim when voting to accept or reject the plan. |
| 10.04 | **Default Provisions** | Except as set forth herein, in the event that the Debtor defaults under the terms of the Plan, the Debtor shall have a period of thirty days from the receipt of written notice from the non-defaulting party identifying the default to (i) cure the default, or (ii) file a motion seeking modification of the Plan under 11 U.S.C. § 1193. In the event that the Debtor elects to file a motion to modify the Plan, and such motion to modify is denied, the Debtor shall have a period of thirty days from the entry of the Order denying the motion to cure the default. |
| | | Prior to exercising any remedy available as a result of a default, the non-defaulting party shall serve written notice of the default, hereinafter "Notice of Default". The Notice of Default shall be served upon the Reorganized Debtor, Debtor's attorney and, if the case is still open, the Office of the Bankruptcy Administrator in a manner provided by Fed. R. Bankr. P. 7004 for service of a summons and complaint upon a domestic corporation or partnership. If the Debtor has not cured the default by the cure date or if the Debtor has not filed a motion seeking modification of the Plan, or if the Debtor filed a motion to modify the Plan, the motion was denied and the Debtor did not cure with the applicable time as specified above, the non-defaulting party may proceed with its claim(s) or remedies as set out herein or as provided by law. |

Respectfully submitted, this the 28th day of October, 2024.


/s/ Huntley Nero_____          Huntley Nero, President_____
Signature of Plan Proponent                Print Name


/s/ Samantha K. Brumbaugh_____       Samantha K. Brumbaugh_____
 Signature of Attorney for Plan Proponent   Print Name

**TD&H Inc.**
**Exhibit A – Year 1 Projections**

| | Dec | Jan | Feb | March | April | May | June | July | August | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FedEx Income | $152,000.00 | $158,500.00 | $92,000.00 | $90,000.00 | $90,000.00 | $112,500.00 | $90,000.00 | $112,500.00 | $92,000.00 | $96,500.00 | $122,500.00 | $109,500.00 |
| M&A Payment | $8,000.00 | $8,000.00 | $8,000.00 | $8,000.00 | $8,000.00 | $8,000.00 | $8,000.00 | $8,000.00 | $8,000.00 | $8,000.00 | $8,000.00 | $8,000.00 |
| Travis High | - | - | - | - | - | - | $250,000.00 | - | - | - | - | - |
| **TOTAL INCOME** | $160,000.00 | $166,500.00 | $100,000.00 | $98,000.00 | $98,000.00 | $120,500.00 | $348,000.00 | $120,500.00 | $100,000.00 | $104,500.00 | $130,500.00 | $117,500.00 |
| **EXPENSES** | | | | | | | | | | | | |
| **Building** | | | | | | | | | | | | |
| Rent | 628.00 | 628.00 | 628.00 | 628.00 | 628.00 | 628.00 | 628.00 | 628.00 | 628.00 | 628.00 | 628.00 | 628.00 |
| Spectrum | 164.33 | 164.33 | 164.33 | 164.33 | 164.33 | 164.33 | 164.33 | 164.33 | 164.33 | 164.33 | 164.33 | 164.33 |
| Office Supplies | - | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | - |
| Emails/Zoom | 44.79 | 44.79 | 30.39 | 30.39 | 30.39 | 30.39 | 30.39 | 30.39 | 30.39 | 30.39 | 30.39 | 30.39 |
| RingCentral | 36.85 | 36.85 | 36.85 | 36.85 | 36.85 | 36.85 | 36.85 | 36.85 | 36.85 | 36.85 | 36.85 | 36.85 |
| **Insurance** | | | | | | | | | | | | |
| PIPFS (Insurance - Auto, Physical) | 5,000.00 | 4,500.00 | 3,250.00 | 3,250.00 | - | 6,500.00 | 3,250.00 | 3,250.00 | 3,250.00 | - | 6,500.00 | 3,250.00 |
| WC | 2,000.00 | 2,500.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,500.00 | 2,000.00 | 2,500.00 | 2,000.00 | 2,000.00 | 2,500.00 | 2,000.00 |
| EPLI(Fedex coverage) | 395.34 | 395.34 | 395.34 | 395.34 | 395.34 | 395.34 | 395.34 | 395.34 | 395.34 | 395.34 | 395.34 | 395.34 |
| Realm Health | 369.95 | 369.95 | 369.95 | 369.95 | 369.95 | 369.95 | 369.95 | 369.95 | 369.95 | 369.95 | 369.95 | 369.95 |
| **Employees** | | | | | | | | | | | | |
| Payroll | 71,500.00 | 80,464.00 | 55,856.00 | 55,856.00 | 55,856.00 | 69,820.00 | 55,856.00 | 69,820.00 | 55,856.00 | 55,856.00 | 69,820.00 | 58,964.00 |
| APD Fees | 950.00 | 950.00 | 600.00 | 600.00 | 600.00 | 750.00 | 600.00 | 750.00 | 600.00 | 600.00 | 750.00 | 650.00 |
| Advantix Trainer Fees | 212.31 | 212.31 | 212.31 | 212.31 | 212.31 | 212.31 | 212.31 | 212.31 | 212.31 | 212.31 | 212.31 | 212.31 |
| Fuel | 20,000.00 | 22,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 20,000.00 | 16,000.00 | 20,000.00 | 16,000.00 | 16,000.00 | 20,000.00 | 17,000.00 |
| Parts/Supplies/Maintenance | 9,500.00 | 8,400.00 | 6,000.00 | 6,400.00 | 6,000.00 | 7,900.00 | 6,000.00 | 7,900.00 | 6,000.00 | 6,000.00 | 8,000.00 | 7,000.00 |
| **Professional Fees** | | | | | | | | | | | | |
| Accountant/Quickbooks | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| **Misc.** | | | | | | | | | | | | |
| Groundcloud | 660.93 | 660.93 | 660.93 | 660.93 | 660.93 | 660.93 | 660.93 | 660.93 | 660.93 | 660.93 | 660.93 | 660.93 |
| Chrysler Capital | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 |
| Verizon | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 |
| Velocitor | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel | - | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 |
| Uhaul | - | - | - | - | - | - | - | - | - | - | - | - |
| Enterprise | - | 625.00 | 625.00 | 625.00 | 625.00 | 625.00 | 625.00 | 625.00 | 625.00 | 625.00 | 625.00 | 625.00 |
| R&D Rental | - | - | - | - | - | - | - | - | - | - | - | - |
| Penske | 7,128.00 | 650.00 | - | - | - | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 2,600.00 | 2,600.00 |
| APF Truck Rental | - | - | 3,000.00 | - | 3,000.00 | - | - | 3,000.00 | - | - | - | - |
| Registration Fees | - | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | - |
| Indeed | - | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| UPS/Shipping | - | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 | 62.50 |
| Physicals | - | - | - | - | - | - | - | - | - | - | - | - |
| Bank Fees | - | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Transportation of Rentals | - | - | - | - | - | - | - | - | - | - | - | - |
| Truck Lease Payments | 4,336.70 | 4,336.70 | 4,336.70 | 4,336.70 | 4,336.70 | 4,336.70 | 4,336.70 | 4,336.70 | 4,336.70 | 4,336.70 | 4,336.70 | 4,336.70 |
| Bush | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Expenses** | $124,702.20 | $129,425.70 | $96,653.30 | $94,053.30 | $93,403.30 | $118,067.30 | $94,303.30 | $117,817.30 | $94,303.30 | $91,053.30 | $120,117.30 | $100,073.80 |
| **Net** | 35,297.80 | 37,074.30 | 3,346.70 | 3,946.70 | 4,596.70 | 2,432.70 | 253,696.70 | 2,682.70 | 5,696.70 | 13,446.70 | 10,382.70 | 17,426.20 |
| **Chapter 11 Plan Payments** | | | | | | | | | | | | |
| Administrative Fees | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 1,000.00 | - | - | - | - | - | - | - |
| Class 1–507(a) priority claims | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 2–Truist 0001 | 2,266.00 | 2,266.00 | 2,266.00 | 2,266.00 | 2,266.00 | 2,266.00 | 2,266.00 | 2,266.00 | 2,266.00 | 2,266.00 | 2,266.00 | 2,266.00 |
| Class 3–Truist 0005 | 851.00 | 851.00 | 851.00 | 851.00 | 851.00 | 851.00 | 851.00 | 851.00 | 851.00 | 851.00 | 851.00 | 851.00 |
| Class 4–Vox | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 5–Knightsbridge | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 6–LG | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 7–First Citizens | 2,348.00 | 2,348.00 | 2,348.00 | 2,348.00 | 2,348.00 | 2,348.00 | 2,348.00 | 2,348.00 | 2,348.00 | 2,348.00 | 2,348.00 | 2,348.00 |
| Class 8–Pinnacle | 1,114.00 | 1,114.00 | 1,114.00 | 1,114.00 | 1,114.00 | 1,114.00 | 1,114.00 | 1,114.00 | 1,114.00 | 1,114.00 | 1,114.00 | 1,114.00 |
| Class 9–Truist | 6,861.00 | 6,861.00 | 6,861.00 | 6,861.00 | 6,861.00 | 6,861.00 | 6,861.00 | 6,861.00 | 6,861.00 | 6,861.00 | 6,861.00 | 6,861.00 |
| Class 10–Truist 0017 | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 11—General Unsecured | - | - | - | - | - | - | 175,000.00 | - | - | - | - | - |
| Class 12–Equity Interest | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Chp 11 Payments** | $16,440.00 | $16,440.00 | $16,440.00 | $16,440.00 | $14,440.00 | $13,440.00 | $188,440.00 | $13,440.00 | $13,440.00 | $13,440.00 | $13,440.00 | $13,440.00 |
| **Net Income** | $18,857.80 | $20,634.30 | $(13,093.30) | $(12,493.30) | $(9,843.30) | $(11,007.30) | $65,256.70 | $(10,757.30) | $(7,743.30) | $6.70 | $(3,057.30) | $3,986.20 |
| **Cash Flow** | $67,844.00 | $88,478.30 | $75,385.00 | $62,891.70 | $53,048.40 | $42,041.10 | $107,297.80 | $96,540.50 | $88,797.20 | $88,803.90 | $85,746.60 | $89,732.80 |

$45,000.00

TD&H, Inc.
Case NO.: 24-10392
Exhibit B

|  | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|
| **FedEx Income** | $152,000.00 | $1,320,000.00 | $1,359,600.00 | $1,400,388.00 | $1,442,399.64 | $1,485,671.63 |
| **M&A Payment** | $ 8,000.00 | $ 96,000.00 | $ 96,000.00 | $ 96,000.00 | $ 96,000.00 | $ 88,000.00 |
| **Travis High Recover** | $ - | $ 225,000.00 | $ - | $ - | $ - | $ - |
| **TOTAL INCOME** | $160,000.00 | $1,641,000.00 | $1,455,600.00 | $1,496,388.00 | $1,538,399.64 | $1,573,671.63 |
| | | | | | | |
| **EXPENSES** | | | | | | |
| **Building** | | | | | | |
| Rent | $ 628.00 | $ 7,536.00 | $ 7,536.00 | $ 7,536.00 | $ 7,536.00 | $ 7,536.00 |
| Spectrum | $ 164.33 | $ 1,800.00 | $ 1,854.00 | $ 1,909.62 | $ 1,966.91 | $ 2,025.92 |
| Office Supplies | $ - | $ 1,800.00 | $ 1,854.00 | $ 1,909.62 | $ 1,966.91 | $ 1,500.00 |
| Emails/Zoom | $ 44.79 | $ 268.74 | $ 276.80 | $ 285.11 | $ 293.66 | $ 302.47 |
| RingCentral | $ 36.85 | $ 221.10 | $ 227.73 | $ 234.56 | $ 241.60 | $ 248.85 |
| **Insurance** | | | | | | |
| WC | $ 5,000.00 | $ 42,000.00 | $ 43,260.00 | $ 44,557.80 | $ 45,894.53 | $ 47,271.37 |
| IPFS (Insurance - Auto, Physical ) | $ 2,000.00 | $ 26,000.00 | $ 26,780.00 | $ 27,583.40 | $ 28,410.90 | $ 29,263.23 |
| EPLI(Fedex coverage) | $ 395.34 | $ 2,372.04 | $ 2,443.20 | $ 2,516.50 | $ 2,591.99 | $ 2,669.75 |
| Realm Health | $ 369.95 | $ 2,219.70 | $ 2,286.29 | $ 2,354.88 | $ 2,425.53 | $ 2,498.29 |
| **Employees** | | | | | | |
| Payroll | $ 71,500.00 | $ 755,524.00 | $ 778,189.72 | $ 801,535.41 | $ 825,581.47 | $ 850,348.92 |
| APD Fees | $ 950.00 | $ 8,400.00 | $ 8,652.00 | $ 8,911.56 | $ 9,178.91 | $ 9,454.27 |
| Advantix Trainer Fees | $ 212.31 | $ 1,273.86 | $ 1,312.08 | $ 1,351.44 | $ 1,391.98 | $ 1,433.74 |
| Fuel | $ 20,000.00 | $ 215,000.00 | $ 221,450.00 | $ 228,093.50 | $ 234,936.31 | $ 241,984.39 |
| **Parts/Supplies/Maintenance** | $ 9,500.00 | $ 85,100.00 | $ 87,653.00 | $ 90,282.59 | $ 92,991.07 | $ 95,780.80 |
| **Professional Fees** | | | | | | |
| Accountant/Quickbooks | $ 500.00 | $ 3,000.00 | $ 3,090.00 | $ 3,182.70 | $ 3,278.18 | $ 3,376.53 |
| **Misc.** | | | | | | |
| Groundcloud | $ - | $ - | $ - | $ - | $ - | $ - |
| Chrysler Capital | $ 660.93 | $ 7,931.16 | $ 7,931.16 | $ 7,931.16 | $ 7,931.16 | $ 7,270.23 |
| Verizon | $ 375.00 | $ 2,250.00 | $ 2,317.50 | $ 2,387.03 | $ 2,458.64 | $ 2,532.39 |
| Velocitor | $ 900.00 | $ 5,400.00 | $ 5,562.00 | $ 5,728.86 | $ 5,900.73 | $ 6,077.75 |
| Hotel/Travel | $ - | $ 2,000.00 | $ 2,060.00 | $ 2,121.80 | $ 2,185.45 | $ 2,251.02 |
| Uhaul | $ - | $ - | $ - | $ - | $ - | $ - |
| Enterprise | $ - | $ - | $ - | $ - | $ - | $ - |
| P&D Rental | $ - | $ 7,500.00 | $ 7,725.00 | $ 7,956.75 | $ 8,195.45 | $ 8,441.32 |
| Penske | $ 7,128.00 | $ 14,000.00 | $ 14,420.00 | $ 14,852.60 | $ 15,298.18 | $ 15,757.12 |
| APF Truck Rental | $ - | $ - | $ - | $ - | $ - | $ - |
| Registration Fees | $ - | $ 9,000.00 | $ 9,270.00 | $ 9,548.10 | $ 9,834.54 | $ 10,129.58 |
| Indeed | $ - | $ 3,000.00 | $ 3,090.00 | $ 3,182.70 | $ 3,278.18 | $ 3,376.53 |
| UPS/Shipping | $ - | $ 600.00 | $ 618.00 | $ 636.54 | $ 655.64 | $ 675.31 |
| Physicals | $ - | $ 750.00 | $ 772.50 | $ 795.68 | $ 819.55 | $ 844.13 |
| Bank Fees | $ - | $ 480.00 | $ 494.40 | $ 509.23 | $ 524.51 | $ 540.24 |
| Capital Expenses | $ - | $ 15,000.00 | $ 15,000.00 | $ 40,000.00 | $ 50,000.00 | $ 70,000.00 |
| **Truck Lease Payments** | | | | | | |
| Bush | $ 4,336.70 | $ 52,040.40 | $ 52,040.40 | $ 8,673.40 | $ - | $ - |
| **Total Expenses** | $124,702.20 | $1,272,467.00 | $1,308,165.78 | $1,326,568.53 | $1,365,767.97 | $1,423,590.15 |
| **Net** | $ 35,297.80 | $ 368,533.00 | $ 147,434.22 | $ 169,819.47 | $ 172,631.67 | $ 150,081.48 |
| **Chapter 11 Plan Payments** | | | | | | |
| Administrative Fees | $ 3,000.00 | $ 10,000.00 | $ - | $ - | $ - | $ - |
| Class 1--507(a) priority claims | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 2--Trust 0001 | $ 2,266.00 | $ 27,192.00 | $ 27,192.00 | $ 27,192.00 | $ 27,192.00 | $ 24,926.00 |
| Class 3--Truist 0005 | $ 851.00 | $ 10,212.00 | $ 10,212.00 | $ 10,212.00 | $ 10,212.00 | $ 9,361.00 |
| Class 4-Vox | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 5-Knightsbridge | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 6-LG | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 7-First Citizens 6216 | $ 2,348.00 | $ 28,176.00 | $ 28,176.00 | $ 28,176.00 | $ 28,176.00 | $ 25,828.00 |
| Class 8-Pinnacle | $ 1,114.00 | $ 13,368.00 | $ 13,368.00 | $ 13,368.00 | $ 13,368.00 | $ 12,254.00 |
| Class 9-Truist | $ 6,861.00 | $ 82,332.00 | $ 82,332.00 | $ 82,332.00 | $ 82,332.00 | $ 75,471.00 |
| Class 10-Truist 0014 | | $ - | $ - | $ - | $ - | $ - |
| Class 11-General Unsecured | $ - | $ 175,000.00 | $ - | $ - | $ - | $ - |
| Class 12-Equity Interest | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Chp 11 Payments | $ 16,440.00 | $ 346,280.00 | $ 161,280.00 | $ 161,280.00 | $ 161,280.00 | $ 147,840.00 |
| Net | $ 18,857.80 | $ 22,253.00 | $ (13,845.78) | $ 8,539.47 | $ 11,351.67 | $ 2,241.48 |
| Cash Flow | $45,000.00    $ 63,857.80 | $ 86,110.80 | $ 72,265.02 | $ 80,804.49 | $ 92,156.16 | $ 94,397.64 |

1 2024 budget is for December 2024.

2 2029 budget is for time period beginning January 2029 through November 2029.

3 Beginning cash is the projected cash on hand as of December 1, 2024.

**TD&H, Inc**
**Case No.: 24-10392**
**Exhibit C**
**Chapter 7 Liquidation Analysis**

## Assets

| | Value | Lien Holders | | Lien Amount | Equity |
|---|---|---|---|---|---|
| Bank Accounts / Cash | $ 37,000.00 | Truist - 0001 | 1 | $ 105,414.80 | $ - |
| Accounts Receivable | $ 68,000.00 | Truist - 0001 | 1 | $ 105,414.80 | $ - |
| 2021 Ford 59 P1200 - 5139 | $ 16,800.00 | First Citz - 6216 | | $ 38,021.98 | $ - |
| 2021 Ford Super Duty --5101 | $ 22,400.00 | First Citz - 9711 | | $ 52,067.23 | $ - |
| 2021 Ford Super Duty --5081 | $ 20,300.00 | First Citz - 9640 | | $ 52,067.03 | $ - |
| 2021 Chevy G3500 - 1108 | $ 20,300.00 | First Citz - 9727 | | $ 120,653.88 | $ - |
| 2022GMC 3500 - 7224 | $ 15,400.00 | First Citz - 2214 | | $ 24,725.83 | $ - |
| 2020 Mercedes Sprinter -6901 | $ 14,000.00 | First Citz - 6617 | | $ 20,887.26 | $ - |
| 2022 Ford E350 & F59 P700 | $ 51,800.00 | Pinnacle | | $ 90,474.65 | $ - |
| 7 2021 Chevy Box Trucks & 2 2020 Chevy Box Trucks | $ 177,100.00 | Truist - 0006 | | $ 279,765.21 | $ - |
| 4 GMC 3500 Box Trucks | $ 61,600.00 | Truist - 0026 | | $ 144,217.98 | $ - |
| 2019 International - 8734 | $ 21,000.00 | Truist - 0017 | | $ 90,980.83 | $ - |
| 3 2020 Ram Promaster 2500 | $ 44,100.00 | Truist - 0022 | | $ 39,264.86 | $ 4,835.14 |
| 2019 International LT625 -8858 | $ 12,600.00 | Truist - 0012 | | $ 98,860.87 | $ - |
| 2015 Utilty - 6808 | $ 7,000.00 | Truist - 0010 | | $ 29,707.33 | $ - |
| 2016 Freightliner | $ 14,000.00 | Truist - 0030 | | $ 24,940.62 | $ - |
| 2019 International - 4569 | $ 24,500.00 | Truist - 0014 | | $ 94,537.32 | $ - |
| 2019 International LT625 -9093 | $ 19,600.00 | Truist - 0024 | | $ 94,401.72 | $ - |
| 2019 International LT625 -9298 | $ 21,000.00 | Truist - 0008 | | $ 89,902.96 | $ - |
| FedEX Contract | $ 40,000.00 | Truist - 0001 and 0005 | | $ 221,668.98 | $ - |
| Unliened Vehicles | $ 25,905.00 | | | | $ 25,905.00 |
| Total | $ 734,405.00 | | | | $ 30,740.14 |

## Chapter 7 Liquidation Analysis

| | | | Claim | | Payout | % |
|---|---|---|---|---|---|---|
| Cost of Administration | | | $ 25,000.00 | | $ 25,000.00 | 100% |
| | 1 | Priority Claims | $ - | | $ - | 0% |
| | 2 | Truist - 0001 | $ 105,414.80 | | $ 105,000.00 | 100% |
| | 3 | Truist - 0005 | $ 116,254.18 | | $ 40,000.00 | 34% |
| | 4 | Vox Funding | $ 158,050.00 | | $ - | 0% |
| | 5 | Knightsbrige | $ 70,000.00 | | $ - | 0% |
| | 6 | LG Funding | $ 69,286.25 | | $ - | 0% |
| | 7 | First Citizens | $ 308,423.41 | 2 | $ 109,200.00 | 35% |
| | 8 | Pinnacle | $ 90,474.65 | | $ 51,800.00 | 57% |
| | 9 | Truist--Retained Trucks | $ 582,590.39 | | $ 319,200.00 | 55% |
| | 10 | Truist--Surrendered Trucks | $ 395,989.21 | | $ 86,100.00 | 22% |
| | 11 | General Unsecured | $ 681,486.63 | 3 | $ 5,740.14 | 1% |
| | 12 | Equity Interests of Debtor | $ - | | $ - | 0% |

1 Truist has a first lien on accounts, AR, and FedEd contract
   Class 2 - 6 have second through sixth liens on accounts , AR and FedEx contract
2. Loans of First Citizens are Crosscollateralized, but estimates do not show excess collatral on any individual loan
3 Includes estimated deficiency balances

Exhibit D

## TRUCK LEASE AGREEMENT

**THIS EQUIPMENT LEASE AGREEMENT** (this "**Lease**") is entered into as of this \_\_\_ day of _____, 2024 (the "**Effective Date**"), by and between **TD&H, Inc.** (the "**Lessor**") and **M&A Logistics, Inc.** (the "**Lessee**").

### Background Statement

WHEREAS, Lessor is a North Carolina Corporation and a Chapter 11 Debtor, having filed bankruptcy on June 25, 2024.

WHEREAS, Lessor owns numerous trucks, used and utilized by Lessee in its day to day operations.

WHEREAS, Lessor desires to rent to Lessee and Lessee desires to rent from Lessor, the Equipment, pursuant to the terms and conditions set forth herein.

### Statement of Agreement

**NOW, THEREFORE,** in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      **Lease of Trucks.**  Subject to the provisions set forth below, the Lessor hereby leases to the Lessee and the Lessee hereby rents from the Lessor the following trucks:

See Attached Exhibit A

2.      **Term.**  The term (the "**Term**") of this Lease shall begin on the Effective Date and continue for a period of sixty (60) months.  The lease may be terminated upon thirty (30) calendar days advance notice by either party or otherwise agreed to in writing.

3.      **Rental.**  The Lessee shall, on the Effective Date, pay Eight Thousand and 00/100 Dollars ($8,000.00) per month beginning _____ 15, 2024 to the Lessor as rent for the use of the trucks during the foregoing Term.

4.      **Ownership and Use.**  The trucks shall at all times be the sole and exclusive property of the Lessor.  Lessee shall have no rights or property interest therein, except for the right to use such trucks pursuant to the terms of this Lease.  Lessee shall insure the trucks assigning the Lessor as loss payee or assigning a loss payee as directed by the Lessor and shall be responsible for the personal property taxes related to the same.

5.      **Inspection.**  Lessor, or its agents, may, at any time, inspect the trucks and the manner in which they are being used.

6.　　**Return.**　At the end of the term of this Lease, the Lessee shall return the trucks at its own expenses to the Lessor in as good condition as when received, reasonable wear and tear expected.

7.　　**Breach; Termination.**　Upon default in the payment of any installment of rent, or upon a breach of any other condition or provision of this Lease to be performed or observed by the Lessee, the Lessor shall have the right to terminate this lease after giving Lessee ten (10) business days in which to cure any default.　Any notice of default must be made in writing. Thereafter, Lessor may immediately and without further notice take possession of the trucks without legal proceedings.

8.　　**Assignment by Lessee.**　Neither this Lease nor the Lessee's rights hereunder shall be assignable by the Lessee except with Lessor's written consent, which Lessor shall not unreasonably withhold from the Lessee.　Upon any permitted assignment by the Lessee, the assignee shall become bound by all the terms of this Lease required to be performed by the Lessee.

9.　　**Assignment by Lessor.**　This Lease and all or any of the Lessor's rights hereunder may be assigned by the Lessor at any time upon notice in writing to the Lessee.　The Lessee, upon receiving written notice of any such assignment tighter with a duly executed copy of the instrument of assignment, shall thereafter make all rental payments as may be directed in such notice or instrument of assignment.　Following such assignment the term "lessor" as used in this Lease shall be deemed to include such assignee.　Further, Lessor may grant a security interest in the trucks without the consent of the Lessee.

10.　　**Entire Agreement.**　This Lease embodies the entire agreement of the Lessor and the Lessee and no modification hereof may be made except in a writing signed by both parties.

11.　　**Governing Law.**　This Lease shall be governed by and construed in accordance with the laws of the State of North Carolina.

[The remainder of this page is left blank intentionally.]

Exhibit D

IN WITNESS WHEREOF the parties hereto have executed this Truck Lease Agreement under seal on the day and year first above written.

LESSOR:

TD&H, Inc.

By: _____
       Huntley Nero


LESSEE:

M&A Logistics, Inc.

By: _____
       Huntley Nero