**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

In re:                                      )
                                            )
TD&H, Inc.,                                 )    CASE NO: 24-10392
                                                 Chapter 11
                                            )
_____Debtor(s)._____               )

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §
362 FILED BY SANTANDER CONSUMER USA INC. d/b/a CHRYSLER CAPITAL AS
SERVICER FOR CCAP AUTO LEASE**
**(2025 RAM 1500)**

Santander Consumer USA, Inc. d/b/a Chrysler Capital as servicer for CCAP Auto Lease

("Movant"), a secured creditor herein, moves the Court, pursuant to 11 U.S.C. § 362(d) and Rules

4001(a)(1) and 9014 of the Federal Rules of Bankruptcy Procedure, for entry of an order granting

it relief from the automatic stay, and as grounds therefore shows as follows:

**I.      PRELIMINARY STATEMENT OF RELIEF REQUESTED**

1.      On June 25, 2024 TD&H Inc. (the "Debtor") filed a voluntary Petition for Relief

under Chapter 11 of the Bankruptcy Code (the "Petition Date").

2.      This Court has jurisdiction of the parties and the subject matter pursuant to 28

U.S.C. §§ 157, 1334, and 11 U.S.C. § 1324.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

3.      Movant is a secured creditor of the Debtor, as evidenced by that certain Vehicle

Lease Agreement dated June 12, 2024 (the "Lease").  The Lease was secured by a 2025 RAM

1500 bearing Vehicle Identification Number 1C6SRFFP8SN515752 (the "Collateral").  A true and

correct copy of the Note is attached hereto as **Exhibit "A."**

62550478 v1

4. Movant has a perfected security interest in the Collateral, as noted on the face of the Certificate of Title for the Collateral (the "Certificate of Title"). A true and correct copy of the Certificate of Title is attached hereto as **Exhibit "B."**

5. The outstanding balance owed to the Movant relative to the Collateral as of September 2, 2025 is $48,530.85, with an arrearage of $1,980.79. See Affidavit of Indebtedness attached hereto as **Exhibit "C".** Per the Lease, Debtor was required to make monthly payments of $660.93 beginning on July 12, 2024 and continuing until the Lease's maturity date.

6. The NADA value of the Collateral is $51,600.00 A copy of the valuation report is attached hereto as **Exhibit "D."**

7. Upon information and belief, there are no other liens or encumbrances that are senior to Movant's interest in the Collateral.

8. Debtor has defaulted under the terms of the Lease by failing to make the full monthly payment due on June 12, 2025 and all payments due thereafter.

## III.   BASIS FOR RELIEF

9. Based upon the Debtor's default under the terms of the Note, Movant seeks relief from the automatic stay pursuant to 11 U.S.C. §362 in order to pursue its rights and remedies under state law, including but not limited to, its rights to foreclose its security interest in the Collateral.

10. Section 362(d) sets forth the standards for determining whether relief from stay is appropriate. Section 362(d) states:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including lack of adequate protection of an interest in property of such party in interest;

(2)    with respect to a stay of an act against property under subsection (a) of this section, if-

(A)    the debtor does not have an equity in such property; and

(B)    such property is not necessary to an effective reorganization;

11 U. S. C. § 362.

11.    Movant has not received, and the Debtor has not agreed to provide, any further adequate protection of Movant's interest in the Collateral. Therefore, Movant is not adequately protected with respect to the Collateral.

12.    Movant requests that the order granting relief from stay be effective and enforceable immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 4001(a)(4) and any other provision of the Bankruptcy Code or Bankruptcy Rules shall not apply.

WHEREFORE, Movant respectfully requests that the Court enter an order granting this motion and lifting the automatic stay to permit Movant to repossess and enforce their security interest in the Collateral pursuant to non-bankruptcy law, and for such other relief as the Court may deem in the interests of equity.

Dated this 12th day of September, 2025.

**BURR & FORMAN LLP**

*/s/ Mason Veal*
Mason Veal (NC Bar No. 62110)
Burr & Forman LLP
101 South Tryon Street, Suite 2610
Charlotte, NC 28280
Telephone: 704-347-1170
Fax: 704-347-4467
Email: mveal@burr.com

*Attorney for Santander Consumer USA, Inc.*
*d/b/a Chrysler Capital as servicer for CCAP*
*Auto Lease.*

62550478 v1                                    3

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been served on this, the 12th day

of September, 2025, either by electronic transmission or by United States first class mail, postage

prepaid, to the following:

Debtor:
Td&h, Inc.
640 Golf House Road West
Suite G3
Whitsett, NC 27377

Attorney for Debtor:
Samantha K. Brumbaugh
Ivey, McClellan, Siegmund, Brumbaugh & McDonough, LLP
P.O. Box 3324
Greensboro, NC 27402

Trustee
Brian Richard Anderson
Fox Rothschild LLP
230 N. Elm Street
Suite 1200
Greensboro, NC 27401

/s/ Mason Veal
Mason Veal (NC Bar No. 62110)

62550478 v1                                        4

# EXHIBIT "A"

**CHRYSLER CAPITAL®**

### LEASE PARTIES

**Lessee** TDH INC
940 GOLF HOUSE ROAD WEST SUITE G3
WHITSETT, NC GUILFORD, 27377

**Co-Lessee** N/A

**Vehicle Garaging Address**
940 GOLF HOUSE ROAD WEST
SUITE G3
WHITSETT, NC GUILFORD, 27377

**Lessor (Dealer)**
ASHEBORO CHRYSLER DODGE
JEEP MAZDA
1709 E DIXIE DRIVE
ASHEBORO, NC 27203

### LEASED VEHICLE ("VEHICLE")

NEW ☒  DEMO ☐  USED ☐

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE IDENTIFICATION NUMBER | ODOMETER READING |
|---|---|---|---|---|---|
| 2025 | RAM | 1500 | BIG HORN 4X4 CREW CAB 5'7" BOX | 1C6SRFFP8SN515752 | 13 |

Vehicle is to be used primarily for Personal, Family or Household purposes ☐   Business, Commercial or Agricultural purposes ☒

### TRADE-IN VEHICLE AND ALLOWANCE

Year 2021   Make RAM
Model 1500
VIN 1C6SRFBT5MN822902

Owned ☐   Leased ☒

| | |
|---|---|
| Gross Amount of Trade-In Allowance | $ 28,500.00 |
| Prior Credit or Lease Balance | $ 27,367.11 |
| Net Trade-In Allowance | = $ 1,132.89 |

### NATURE OF LEASE

**This is an agreement to lease the Vehicle.** This Motor Vehicle Lease Agreement ("Lease"), between the undersigned lessee(s) ("Lessee") and the undersigned lessor ("Lessor") whose names and addresses are listed above provides agreed terms and conditions in connection with the lease of the Vehicle. As used in this Lease, the words "you" or "your" refer to the Lessee and "us" or "our" refer to the Lessor (or its successors and assigns). You agree to lease the Vehicle from us according to the terms of this Lease. If more than one Lessee signs this Lease, each Lessee may be held individually liable for the entire amount owing under this Lease. Please note this is a Lease, and not a purchase agreement. Therefore, we own the Vehicle.

**LEASE DATE:** 06/12/2024   **LEASE TERM:** 42 MONTHS   **SINGLE PAYMENT LEASE:** ☐ (check if applicable)   **SIGN AND DRIVE LEASE*:** ☐ (check if applicable)

* If this is a Sign and Drive Lease, CCAP Auto Lease Ltd. will pay the first Monthly Payment described in Section 2.A below.

## FEDERAL CONSUMER LEASING ACT DISCLOSURES

**1. AMOUNT DUE AT LEASE SIGNING OR DELIVERY** (Itemized Below)**

$ 4,132.89

**2. MONTHLY OR SINGLE PAYMENT**
A. Your first Monthly Payment of $ 660.93 is due on 06/12/2024 followed by 41 payments of $ 660.93 due on the 12TH of each month, starting on 07/12/2024
B. The total of your Monthly Payments is $ 27,759.06
C. If this is a Single Payment Lease, your Single Payment of $ N/A is due on N/A which is at Lease Signing or Delivery.

**3. OTHER CHARGES** (not part of your Monthly Payment or Single Payment)
A. Disposition Fee (if you do not purchase the Vehicle) $ 395.00
B. Total $ 395.00

**4. TOTAL OF PAYMENTS** (The amount you will have paid by the end of the Lease)
$ 31,626.02
(Sum of Sections 1, 2.B or 2.C (as applicable) and 3.B, minus Sections 5.A.2 or 5.A.3 (as applicable) and 5.A.4)

Page 1 of 8

Lessee Initials: H.N. / Co-Lessee Initials: N/A

## 5. **ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

| A. AMOUNT DUE AT LEASE SIGNING OR DELIVERY | | B. HOW THE AMOUNT DUE AT LEASE SIGNING OR DELIVERY WILL BE PAID: | |
|---|---|---|---|
| (1) Capitalized Cost Reduction | $ 3,471.96 | (1) Net Trade-in Allowance (if positive) | $ 1,132.89 |
| (2) First Monthly Payment | $ 660.93 | (2) Rebates and Noncash Credits | $ 3,000.00 |
| (3) Single Payment | $ N/A | (3) Amount to be Paid in Cash | $ N/A |
| (4) Refundable Security Deposit | $ N/A | | |
| (5) Title Fees | $ N/A | | |
| (6) Registration Fees | $ N/A | | |
| (7) License Fees | $ N/A | | |
| (8) Upfront Sales/Use Tax | $ N/A | | |
| (9) Capitalized Cost Reduction Tax | $ N/A | | |
| (10) Acquisition Fee | $ N/A | | |
| (11) Dealer Documentation/Service Fee*** | $ N/A | | |
| (12) N/A | $ N/A | | |
| (13) N/A | $ N/A | | |
| (14) TOTAL | $ 4,132.89 | (4) TOTAL | $ 4,132.89 |

## 6. YOUR MONTHLY OR SINGLE PAYMENT IS DETERMINED AS SHOWN BELOW

A. **GROSS CAPITALIZED COST.** The Agreed Upon Value of the Vehicle ( $ 55,061.77 ) and any items you pay for over the Lease Term (such as service contracts, insurance, and outstanding prior credit or lease balance)    $ 56,531.62

B. **CAPITALIZED COST REDUCTION.** The amount of any net trade-in allowance, rebate, noncash credit or cash you pay that reduces the Gross Capitalized Cost    − $ 3,471.96

C. **ADJUSTED CAPITALIZED COST.** The amount used in calculating your Base Monthly Payment or Base Single Payment    = $ 53,059.66

D. **RESIDUAL VALUE.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment or Base Single Payment    − $ 33,847.00

E. **DEPRECIATION AND ANY AMORTIZED AMOUNTS.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term    = $ 19,212.66

F. **RENT CHARGE.** The amount charged in addition to the Depreciation and any Amortized Amounts    + $ 7,737.90

G. **TOTAL OF BASE MONTHLY PAYMENTS OR SINGLE PAYMENT.** The Depreciation and any Amortized Amounts plus the Rent Charge    = $ 26,950.56

H. **LEASE PAYMENTS.** The number of payments in your Lease    ÷ 42

I. **BASE MONTHLY PAYMENT OR BASE SINGLE PAYMENT**    = $ 641.68

J. **SALES/USE TAX**    + $ 19.25

K. N/A    + $ N/A

L. N/A    + $ N/A

M. **TOTAL MONTHLY PAYMENT ("MONTHLY PAYMENT") OR TOTAL SINGLE PAYMENT ("SINGLE PAYMENT")**    = $ 660.93

**EARLY TERMINATION. You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.**

7. **EXCESSIVE WEAR AND USE.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of your contracted mile amount ("Regular Mileage", plus Additional Miles), at $ 0.25 per mile. The "Regular Mileage" shall be 15,000 miles per year. You have the option to purchase miles at Lease signing. You hereby agree to purchase N/A miles at $ 0.15 per mile ("Additional Miles"). Amounts paid for Additional Miles that are not used upon termination of this Lease shall not be refundable.

☐ If this box is checked, the Vehicle was driven more than 500 miles before the beginning of this Lease and you acknowledge, agree, and understand, that the total permissible miles on the odometer before you begin to incur excessive use charges at scheduled termination is N/A which includes the miles already on the Vehicle at Lease execution.

8. **PURCHASE OPTION AT THE END OF LEASE TERM.** You have an option to purchase the Vehicle at the end of the Lease Term for (i) the Residual Value, plus (ii) any past due Monthly Payments and any other amount due under this Lease, plus (iii) official fees and taxes, plus (iv) a $350 purchase option fee (the "Purchase Option Fee"), plus (v) a document or other administrative fee that may be charged by the dealer or third party processing such purchase, up to the maximum allowed by applicable state law. Please contact your preferred dealer for the amount of such document or other administrative fee.

9. **OTHER IMPORTANT TERMS.** Read all pages of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

Lessee Initials: H.N. / Co-Lessee Initials: N/A

## 10. ITEMIZATION OF GROSS CAPITALIZED COST

| | | | |
|---|---|---|---|
| A. Agreed Upon Value of the Vehicle | $ 55,061.77 | H. Dealer Documentation/Service Fee*** | +$ 689.10 |
| B. License/registration/title fees | +$ 94.75 | I. TEMPORARY TAG FEE | +$ 1.00 |
| C. Sales/Use tax | +$ 90.00 | J. N/A | +$ N/A |
| D. Net Trade-In Allowance (if negative) | +$ N/A | K. N/A | +$ N/A |
| E. Optional service contract | +$ N/A | L. N/A | +$ N/A |
| F. Optional maintenance contract | +$ N/A | | |
| G. Acquisition fee | +$ 595.00 | M. Total = Gross Capitalized Cost | =$ 56,531.62 |

\*\*\* **NOTICE TO FLORIDA LESSEES:** This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale or lease.

\*\*\* **NOTICE TO MISSISSIPPI LESSEES:** A DOCUMENT/SERVICE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW, HOWEVER, IT MAY BE CHARGED TO A BUYER/LESSEE FOR THE PREPARATION, HANDLING AND PROCESSING OF DOCUMENTS AND THE PERFORMANCE OF SERVICES RELATED TO THE SALE OR LEASE OF A MOTOR VEHICLE AND MAY INCLUDE DEALER PROFIT. THIS NOTICE IS REQUIRED BY REGULATION OF THE MISSISSIPPI MOTOR VEHICLE COMMISSION.

## 11. OFFICIAL FEES AND TAXES

You will pay when due all government license, title, registration, testing, and inspection fees and taxes for the Vehicle whether included in your Monthly or Single Payment or in other amounts paid to Lessor. You will pay all taxes due under the Lease or related to the Vehicle that the government levies against you, the Vehicle, or the Lessor, even if they become due after the end of the Lease. Your Monthly Payment may change if taxes or fees change and you may be separately billed for taxes and fees.

**Estimated Official Fees and Taxes You Must Pay During the Lease.** The total amount Lessor estimates that you will pay for official and license fees, registration, title, and taxes over the Lease Term, whether included with your Monthly or Single Payment or assessed otherwise: $ 1,140.13 . The actual total of official fees and taxes may be higher or lower depending on the tax rates in effect, the location or the value of the Vehicle when a fee or tax is assessed.

## 12. INSURANCE

**NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.** As a result, you are liable for any physical damage to the Vehicle and any bodily injury, death, personal injury or property damage arising out of your or any person's use of the Vehicle. You agree to maintain in full force and effect primary and noncontributory insurance with at least the following minimum limits and coverage during the Lease Term and until the Vehicle is returned to us: (1) Liability insurance required by applicable state law, including any no-fault and uninsured motorist law; (2) Collision insurance with limits no less than actual value of the Vehicle with a maximum deductible of $1,000; (3) Comprehensive insurance including perils of fire, weather, vandalism and theft, with limits no less than actual value of the Vehicle with a maximum deductible of $1,000; and (4) you must be listed as an insured on the insurance policy. **You understand that the insurance policy must provide CCAP Auto Lease Ltd. with primary coverage as an additional insured on Item (1) and as loss payee on Items (2) and (3). The policy must state that CCAP Auto Lease Ltd. will be given at least 10 days' notice of any cancellation, nonrenewal, limit reductions or material coverage changes. You agree to buy the insurance from an insurance company reasonably acceptable to CCAP Auto Lease Ltd. and to furnish CCAP Auto Lease Ltd. with initial and renewal certificates of insurance evidencing coverage.**

**NOTICE TO FLORIDA LESSEES: The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by ss. 324.021(7) and 627.736, Florida Statutes.**

## 13. VEHICLE WARRANTIES

The Vehicle is covered by the manufacturer's standard new car warranty. **LESSOR LEASES THE VEHICLE TO YOU "AS IS", EXCEPT AS PROVIDED IN THIS LEASE AND (UNLESS PROHIBITED BY LAW) LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS AS TO THE VEHICLE'S (OR ANY OF ITS PARTS OR ACCESSORIES) CONDITION, MERCHANTABILITY, SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND LESSOR MAKES NO OTHER REPRESENTATIONS OR WARRANTIES WHATSOEVER.** If this Lease is entered into in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new) or West Virginia, Lessor does not disclaim any implied warranty of merchantability or fitness for any particular purpose.

Lessee Initials: H.N. / Co-Lessee Initials: N/A

## 14. OPTIONAL INSURANCE AND ADDITIONAL PRODUCTS

**You are not required to purchase any of the insurance, contracts, agreements or products listed in this Section in order to lease the Vehicle.** Your decision to buy them is not a factor in our decision to approve this Lease. We will obtain any optional insurance coverage(s) that you initial below. A notice you receive when you sign this Lease describes the coverage(s) in greater detail. Life insurance and disability insurance may not cover taxes and other amounts due besides the Base Monthly Payments.

| Optional Product | Charge or Premium | Coverage | Provider | Term | By initialing below you indicate that you elect to purchase the Optional Product |
|---|---|---|---|---|---|
| Service Contract | $ N/A | N/A | N/A | N/A | N/A / N/A ✔ Lessee/Co-Lessee Initials |
| Maintenance Contract | $ N/A | N/A | N/A | N/A | N/A / N/A ✔ Lessee/Co-Lessee Initials |
| Wear and Tear | $ N/A | N/A | N/A | N/A | N/A / N/A ✔ Lessee/Co-Lessee Initials |
| Other N/A | $ N/A | N/A | N/A | N/A | N/A / N/A ✔ Lessee/Co-Lessee Initials |
| Other N/A | $ N/A | N/A | N/A | N/A | N/A / N/A ✔ Lessee/Co-Lessee Initials |

## 15. LATE CHARGES / RETURNED INSTRUMENT CHARGE / SECURITY DEPOSIT

A. **LATE CHARGES.** If this is a Single Payment Lease, you are not liable for any late charges. If this is a Monthly Payment Lease, and if Lessor does not receive all or any portion of any payment within 10 days of its due date, you must pay Lessor a late charge of $35 or such lesser maximum amount as may be set by law except if the Dealer is located in Colorado, Iowa, Kansas, Louisiana, Maine or Utah. If the Dealer is located in Colorado, you must pay Lessor a late charge of the lesser of $15 or 5% of the unpaid portion of any payment Lessor does not receive within 10 days of its due date. If the Dealer is located in Iowa, you will not be required to pay a late charge. If the Dealer is located in Kansas, you must pay Lessor a late charge of the lesser of $25 or 5% of the unpaid portion of any payment Lessor does not receive within 10 days of its due date. If the Dealer is located in Louisiana, you must pay Lessor a late charge of the greater of $25 or 5% of the unpaid portion of any payment Lessor does not receive within 10 days of its due date. If the Dealer is located in Maine, you must pay Lessor a late charge of the lesser of $10 or 5% of the unpaid portion of any payment Lessor does not receive within 15 days of its due date. If the Dealer is located in Utah, you must pay Lessor a late charge of the greater of $30 or 5% of the unpaid portion of any payment Lessor does not receive within 10 days of its due date.

B. **RETURNED INSTRUMENT CHARGE.** If any check, draft or similar instrument you send in payment is returned to us unpaid for any reason, including, but not limited to, non-sufficient funds, you must pay a returned instrument charge of $25, or such lesser amount as is permitted by law, in addition to any amounts you are charged by any other party and the amount of the dishonored instrument. If no such amount is permitted by law, you will not owe a returned instrument charge. No returned instrument charge will be assessed if this Lease is governed by Maine law.

C. **REFUNDABLE SECURITY DEPOSIT.** You agree that a security deposit may be required on this Lease and that Lessor may hold the security deposit. Any interest or monetary benefit which may accrue will not be paid to you and will not be used to reduce your obligation under this Lease. The security deposit cannot be used for a Monthly Payment. Lessor will retain any amounts held as a security deposit until all amounts due under this Lease have been paid in full, including personal property taxes, and Lessor may apply the security deposit against any unpaid amounts.

## 16. VEHICLE USE / MAINTENANCE

A. **VEHICLE USE.** You will be responsible for all operating expenses arising from the use of the Vehicle. You promise that neither you nor anyone else will: (1) use the Vehicle in any way which is illegal; (2) use the Vehicle in any way which would cause cancellation or suspension of the required insurance, warranty or other protection; (3) use the Vehicle as a public or private carrier; (4) remove the Vehicle for more than 30 days from the state where you reside or from the United States; (5) alter or remove equipment from the Vehicle which would decrease its value; (6) use the Vehicle in a livery service or conveying parcels or people for hire; (7) operate the Vehicle without the required driving license or insurance coverage; (8) fail to pay any fine, toll, ticket or penalty associated with the Vehicle. If you fail to pay, you will reimburse us and pay a $25 administration fee per occurrence, where permitted by law, for any fine, toll, ticket, penalty or other amount paid on your behalf, even if payment is requested after the termination date of this Lease.

B. **VEHICLE MAINTENANCE.** You must keep the Vehicle in the same condition as when you leased it, normal wear and mileage excepted. You must, at your expense, maintain the Vehicle in good operating order and appearance and maintain the Vehicle in accordance with all legal requirements (including inspections), the manufacturer's recommendations and warranty requirements, including having service in connection with any recall campaign completed and validated. Lessor has the right to inspect the Vehicle at any time. Lessor has no obligation to provide a replacement vehicle for any reason. You agree to keep and maintain all service records on the Vehicle during the Lease Term and provide such records to the Lessor at the end of the Lease Term.

C. **NOTICE TO COLORADO LESSEES IN EVENT OF TOLL VIOLATIONS:** Pursuant to the requirements of Colorado Revised Statutes § 43-4-808, you will be liable for payment of all toll evasion violation civil penalties incurred on or after the date you take possession of the motor Vehicle under this Lease. The Lessor will provide your name, address, and state driver's license number to the proper Colorado authorities when a toll evasion violation civil penalty is incurred during the term of this Lease.

D. **INDEMNITY. You agree to indemnify and hold us and our assigns, agents, and insurers harmless from all claims, demands, penalties, fines, losses and expenses (including reasonable attorneys' fees to the extent not prohibited by law) arising from the Vehicle's possession, use, condition or operation, including claims based on strict liability.**

## 17. RIGHT TO TERMINATE EARLY

A. **LESSEE'S RIGHT TO TERMINATE EARLY.** You may terminate this Lease at any time before the end of the Lease Term. If you elect to terminate this Lease before the end of the Lease Term and you do not exercise your Purchase Option, the charge for such early termination is the Early Termination Liability as defined below in Section 18.

B. **LESSOR'S RIGHT TO TERMINATE EARLY.** Lessor may terminate this Lease before the end of the Lease Term if you are in Default. If you do not exercise your Option to Purchase, upon such termination, Lessor shall be entitled to the following charges: (1) the Early Termination Liability as defined below in Section 18; plus (2) reasonable expenses, if any, incurred as a direct result of retaking the Vehicle, holding it, preparing it for sale and selling it; plus (3) if Lessor hires an attorney who is not a salaried employee of Lessor to collect what you owe, you agree to pay reasonable attorneys' fees except that Iowa, Maine and Ohio Lessees shall not be obligated to pay attorneys' fees.

Lessee Initials: H.N. / Co-Lessee Initials: N/A

## 18. EARLY TERMINATION LIABILITY

**A. MONTHLY PAYMENT LEASE.** For a Monthly Payment Lease, if this Lease terminates before the start of the last Monthly Period (defined in Section 19.A below) you agree to pay the sum of Items (1) through (5) as follows:

1. Any unpaid Monthly Payments accrued up to the termination date, plus
2. A Turn-in Fee of $495 or, if we repossess the Vehicle, instead of a Turn-in Fee, the actual expenses we incur in connection with repossessing, obtaining, storing, preparing for sale, and selling the Vehicle, including transportation and reconditioning, plus
3. Official fees and taxes in connection with the termination, plus
4. All other amounts due and owing under this Lease, except excess wear and mileage, plus
5. An early termination charge equal to the amount by which the Adjusted Lease Balance exceeds the Vehicle's Realized Value at termination. Notwithstanding this amount, if the Vehicle is not a Total Loss, the early termination charge will not exceed the amount of any remaining payments and charges for Excessive Wear and excess mileage that you would have owed under Section 21.A had this Lease terminated as scheduled at the end of the Lease Term.

**B. SINGLE PAYMENT LEASE.** For a Single Payment Lease, if this Lease terminates before the start of the last Monthly Period (defined in Section 19.B below) you agree to pay the sum of Items (1) through (4) as follows:

1. A Turn-in Fee of $495 or, if we repossess the Vehicle, instead of a Turn-in Fee, the actual expenses we incur in connection with repossessing, obtaining, storing, preparing for sale, and selling the Vehicle, including transportation and reconditioning, plus
2. Official fees and taxes in connection with the termination, plus
3. All other amounts due and owing under this Lease, except excess wear and mileage, plus
4. An early termination charge equal to the amount by which the Adjusted Lease Balance exceeds the Vehicle's Realized Value at termination. Notwithstanding this amount, if the Vehicle is not a Total Loss, the early termination charge will not exceed the amount of any charges for Excessive Wear and excess mileage that you would have owed under Section 21.A had this Lease terminated as scheduled at the end of the Lease Term.

If this is a Single Payment Lease and if Early Termination occurs, and the Realized Value exceeds the Adjusted Lease Balance, you agree to pay the sum of Items (1) through (3) in Section 18.B and you will be entitled to a credit ("Single Pay Termination Credit") equal to the lesser of (i) the amount by which the Realized Value exceeds the Adjusted Lease Balance, or (ii) the product of the Single Payment divided by the Lease Term times the number of whole months remaining until scheduled termination. Any amount by which the Single Pay Termination Credit exceeds the sum of Items (1) through (3) in Section 18.B will be refunded to you. If the sum of Items (1) through (3) in Section 18.B exceeds the Single Pay Termination Credit, you will owe the deficiency.

## 19. ADJUSTED LEASE BALANCE

**A. MONTHLY PAYMENT LEASE.** For a Monthly Payment Lease, your Adjusted Lease Balance is the Adjusted Capitalized Cost disclosed on the front of this Lease, less all Depreciation and other Amortized Amounts accrued up to the termination date, calculated in advance on a straight line basis in equal amounts for each month of the Lease. The sum of such Depreciation and other Amortized Amounts will not exceed an amount calculated in accordance with the Constant Yield Method (explained in the final sentence of this subsection below). For purposes of this calculation, the portion of the Base Monthly Payment consisting of the Rent Charges is also an equal amount each month, earned on the first day of each Monthly Period and equal to the amount not allocated to Depreciation and other Amortized Amounts. The Lease Term is divided into monthly periods (each, a "Monthly Period"). The first Monthly Period begins on the due date of the first Monthly Payment (see Section 2.A) and subsequent Monthly Periods begin on the due date of each subsequent Monthly Payment. "Constant Yield Method" means the method of determining the Rent Charge portion of each Base Monthly Payment, under which the Rent Charge for each month is earned in advance by multiplying the constant rate implicit in the Lease times the balance subject to Rent Charge as it declines during the scheduled Lease Term.

**B. SINGLE PAYMENT LEASE.** For a Single Payment Lease, the Adjusted Lease Balance at a given time is determined by subtracting the Base Single Payment from the Adjusted Capitalized Cost and adding the earned Rent Charges for each month or part thereof that has elapsed through the termination date, assuming such rent is earned in equal amounts each month and is earned at the start of each Monthly Period. The first Monthly Period begins on the due date of the Single Payment (see Section 2.C) and subsequent Monthly Periods begin on the same day on each subsequent month.

## 20. REALIZED VALUE OF VEHICLE

**A. REALIZED VALUE.** If the Vehicle is not a Total Loss, the Vehicle's Realized Value will be the amount of any rebates of premiums or charges for insurance, extended warranties or service or maintenance contracts we actually receive, plus, at our option:

1. The gross wholesale sales price we receive for the Vehicle at disposition;
2. The fair wholesale market value of the Vehicle at termination according to a recognized used vehicle guide selected by us and customarily used by motor vehicle dealers, including, but not limited to, Black Book, taking into consideration the Vehicle's mileage and physical condition;
3. Any amount you and we agree to in writing after termination; or
4. If you obtain an independent appraisal (see below), the appraisal amount.

If the Vehicle is a Total Loss, the Realized Value is your insurance deductible, if received by us, plus the Vehicle's actual cash value (less any deductions made by your insurer) we receive from your insurer or any other party in payment for the loss; if there is no such payment, the Realized Value is zero.

**B. INDEPENDENT APPRAISAL.** In the event of an early termination of this Lease, you may obtain, at your own expense, from an independent third party agreeable to both Lessee and Lessor, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value.

## 21. SCHEDULED TERMINATION LIABILITY / EXCESSIVE WEAR

**A. SCHEDULED TERMINATION LIABILITY.** Upon the termination of the Lease as scheduled at the end of the Lease Term or on or after the start of the last Monthly Period (defined in Section 19 above), you will owe all amounts then due or past due and unpaid, charges for Excessive Wear (Section 21.B) and for excess mileage in accordance with Section 7, plus a Disposition Fee equal to $395 or the maximum allowed by applicable law, if lower.

**B. EXCESSIVE WEAR.** You are responsible for repairing all damage and wear that is beyond the minor wear reasonably expected to result from ordinary use and everyday use, assuming that you use the Vehicle as this Lease permits (see Section 16.A) and maintain it as this Lease requires (see Section 16.B) ("Excessive Wear"). Excessive Wear includes, but is not limited to: (i) broken, cracked, chipped, scratched or discolored glass; (ii) damage to or deterioration of the body, metal work, trim or paint, including, by way of example, damage or deterioration that requires straightening of the metal or refinishing of the body; (iii) burned, torn or stained dash, floor covers, seats, headliners, upholstery or interior work; (iv) mismatched wheels or tires (including spare) that are missing, are not in safe condition, or have less than 4/32nd of an inch tread depth; (v) unsafe or unlawful operating condition; (vi) unrepaired or unreplaced mechanical parts which would have been repaired or replaced during the normal service of the Vehicle, including, by the way of example but not limitation, transmissions, air conditioning components, engines, power steering or electrical components, or brakes which require any repair; (vii) any other damage, whether or not insurance covers it; (viii) any repaired or replaced parts which we have not approved; and (ix) missing accessories or equipment that were included in the Vehicle when it was delivered.

Lessee Initials: ___H.N.___ / Co-Lessee Initials: ___N/A___

## 22. PURCHASE OPTION

**A. END OF LEASE TERM.** At scheduled Lease termination, you may purchase the Vehicle "AS IS". You must notify Lessor of your intent to exercise the Option to Purchase. If you exercise the Option to Purchase at scheduled Lease termination, you agree to pay Lessor a sum equal to:

1. The Residual Value;
2. Plus any past due Monthly Payments and any other amount due under this Lease;
3. Plus the Purchase Option Fee, described in Section 8 of this Lease;
4. Plus any official fees, taxes and other charges related to the purchase of the Vehicle;
5. Plus a document or other administrative fee that may be charged by the dealer or third party processing such purchase, up to the maximum allowed by applicable state law. Please contact your preferred dealer for the amount of the document or other administrative fee.

**B. PRIOR TO END OF LEASE TERM.** You have an Option to Purchase the Vehicle "AS IS" at any time prior to the end of the Lease Term. You must notify Lessor before you exercise the Option to Purchase. If you exercise the Option to Purchase at any time prior to the end of the Lease Term, you agree to pay Lessor a sum equal to:

1. Any past due Monthly Payments and any other amount due under this Lease;
2. Plus any official fees, taxes and other charges related to the purchase of the Vehicle;
3. Plus the Adjusted Lease Balance as of the date the Option to Purchase is exercised as determined in accordance with the method indicated in Section 19.A for a Monthly Payment Lease and Section 19.B for a Single Payment Lease;
4. Plus the Purchase Option Fee described in Section 8 of this Lease;
5. Plus a document or other administrative fee that may be charged by the dealer or third party processing such purchase, up to the maximum allowed by applicable state law. Please contact your preferred dealer for the amount of the document or other administrative fee.

## 23. VEHICLE RETURN / LEASE EXTENSION

**A. VEHICLE RETURN/HOLDOVER.** Whether the Lease is terminated early or as scheduled, you must return the Vehicle to the place Lessor specifies, if you do not exercise your purchase option, as described on Section 22 above. If you fail to return the Vehicle to the place specified by the Lessor, you must pay us a transportation fee of $150. You have no right to retain the Vehicle after termination of the Lease and that any holding over without Lessor's consent is a default under the Lease, as agreed under Section 25. If you hold the Vehicle beyond the end of the Lease Term without agreeing to an extension under Section 23.B, you will be liable for additional damages equal to $150, plus (i) in a Monthly Payment Lease, one Monthly Payment for each month or part thereof that you retain the Vehicle, or (ii) in a Single Payment Lease, the Single Payment divided by the number of months in the Lease Term, plus any applicable taxes, for each month or fraction thereof until the Vehicle is returned. Payment of such damages does not grant you the right to possession for the remainder of such month or for any period at all.

**B. LEASE EXTENSION.** Upon Lessor's written approval, at the Lessor's sole discretion, after expiration of the original Lease Term, you shall pay a $100 lease extension fee for the privilege of extending this Lease. You understand that all contractual obligations will apply under any approved extension and that such extension period shall not exceed six (6) months in duration. In the case of such an extension, additional Monthly or Single Payment terms will be specified in a Lease Extension Agreement between you and us.

## 24. TOTAL LOSS / WAIVER OF GAP AMOUNT

A Total Loss occurs, and the Vehicle is a Total Loss, if the Vehicle is lost or stolen and not recovered, is destroyed, is rendered unsuitable for use or has damage such that the Vehicle is not substantially repairable. If the Vehicle is subject to a Total Loss:

1. You will notify us and your insurance company within twenty-four (24) hours after any damage, loss, theft, seizure or impoundment of the Vehicle.
2. You will pay Lessor the GAP amount, which is the early termination charge set forth in Section 18 equal to the difference between the Adjusted Lease Balance and the insurance proceeds received by Lessor on account of the Total Loss of the Vehicle. However, if you had in effect the vehicle insurance required under this Lease at the time of the Total Loss, Lessor will waive the GAP amount and you will pay to Lessor the sum of: (a) all Monthly Payments overdue and any other amounts that are due or past due at the time of the loss; plus (b) any other amounts, including any deductible, that was subtracted from the Vehicle's actual cash value to determine the primary carrier insurance settlement proceeds Lessor received for the Total Loss; plus (c) any rebates of charges for warranties, mechanical breakdown protection, maintenance contracts, credit insurance and any other applicable products purchased in connection with this Lease. Even if the Vehicle is insured, you must continue to pay any applicable Monthly Payments until Lessor receives your full insurance proceeds.

## 25. DEFAULT

**A. YOU WILL BE IN DEFAULT IF ANY OF THE FOLLOWING HAPPEN:**

1. You fail to pay any payment under this Lease when due and any period required by law before a default may occur has elapsed;
2. You fail to keep the Vehicle insured as required by this Lease or the Vehicle insurer denies full coverage or liability;
3. You fail to return the Vehicle upon termination of this Lease;
4. You fail to comply with any of the terms and conditions of this Lease;
5. You are subject to a proceeding in bankruptcy, receivership or insolvency or you make an assignment for the benefit of creditors;
6. You die during the Lease Term;
7. **You rent, sublease, assign, or otherwise transfer any interest in this Lease, the Vehicle, or the right to use the Vehicle, without the prior written consent of Lessor;**
8. You make any misrepresentation on your application for credit;
9. You fail to answer traffic summons or pay any traffic tickets or other fines when due;
10. The Vehicle is seized or confiscated for any reason by a law enforcement agency; or
11. Anything else occurs that Lessor believes endangers the Vehicle or its condition, impairs your ability to pay or compromises Lessor's ownership interest in the Vehicle.

Iowa Lessees are in default when the events described in subsections A.2 through A.11 above occur only where such events cause a material impairment to the prospects of payment by Lessee under the Lease or in the condition, value or protection of the Vehicle and Lessor's rights in the Vehicle.

**B. LESSOR'S RIGHTS UPON DEFAULT (INCLUDING ADDITIONAL AMOUNTS YOU OWE UPON DEFAULT).** If you are in default Lessor may:

1. End this Lease and require you to pay the amount you would have owed (a) under Section 18 if you terminated the Lease before the start of the last Monthly Period; or (b) under Section 21.A if you terminated the Lease on or after the start of the last Monthly Period.
2. Take the Vehicle from you without demand. If the law permits, Lessor may go on your property to take the Vehicle. If the Vehicle has an electronic locating device, Lessor may use the device to find the Vehicle.
3. Sue you for damages and to get the Vehicle back.
4. Pursue any other remedy the law provides.

Lessor will exercise its rights without breach of the peace, at reasonable times and places, in a reasonable way, and as the law permits. Lessor may take and store any personal items that are in the Vehicle. If you do not ask for the items back Lessor may dispose of them as the law permits. You will pay Lessor's reasonable expenses of taking these actions as the law permits. These expenses may include expenses of taking and storing the Vehicle, attorneys' fees, collection costs and court costs if permissible under state law, except that, for Iowa, Maine and Ohio Lessees, no attorneys' fees shall be owed. Notwithstanding the foregoing, if you are a Nevada Lessee, your default is only enforceable to the extent that: A. you fail to make a payment as required within 30 days after the date required by this Lease; or B. the prospect of payment, performance or realization of the value of the Vehicle is significantly impaired. If you are a Kansas, Maine, Rhode Island, or South Carolina Lessee, a default is only enforceable to the extent that: A. you fail to make any payment as required by this Lease; or B. the default significantly impairs the prospect of payment, performance or realization of the value of the Vehicle.

Lessee Initials: ___H.N.___ / Co-Lessee Initials: ___N/A___

## 26. ARBITRATION

**YOU AGREE THAT ANY AND ALL CLAIMS WILL BE RESOLVED BY INDIVIDUAL ARBITRATION AND NOT IN COURT IF YOU OR LESSOR REQUESTS ARBITRATION. YOU HEREBY ACKNOWLEDGE THAT YOU ARE WAIVING YOUR RIGHT TO PROCEED IN COURT, AND TO JURY TRIAL. ADDITIONALLY, YOU WAIVE ALL RIGHTS TO PROCEED IN A CLASS ACTION OR CLASS ARBITRATION.** Any controversy or claim between or among you and Lessor, including, but not limited to, those arising out of or relating to the Vehicle, this Lease or any related agreement or any claim based on or arising from an alleged tort, shall at the request of either party be determined by individual arbitration except for proceedings in small claims court, self-help vehicle recovery, and other self-help such as the exercise of set-off rights. The arbitration shall be governed by the Federal Arbitration Act (Title 9, U.S. Code), notwithstanding any choice of law provision in this Lease, and under the authority and the applicable consumer rules and procedures of the American Arbitration Association ("AAA") then in effect which are available at                    If AAA no longer arbitrates the type of dispute at issue, the arbitration organization shall be an organization you propose that is acceptable to Lessor and the rules and procedures shall be the rules and procedures of that arbitration organization. Arbitrator(s) must be licensed attorneys. The arbitration shall take place in the state in which you reside and shall apply the law of the state where the Dealer is located. If you do not reside in the United States, the arbitration shall take place in the state in which the Dealer is located. Lessor will advance all arbitration forum administrative fees, which the arbitrator(s) may decide that you must repay unless such repayment would be prohibited under state law if the dispute were resolved in court. Responsibility for paying costs, attorneys' fees and expenses  will be determined by the arbitrator(s) applying state law. Neither Lessor nor you shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in a private attorney general capacity. If this waiver of class proceedings is held to be unenforceable, the entire arbitration provision is void and the remainder of the Lease remains enforceable. You have the right to opt out of arbitration by notifying us in writing at 1601 Elm Street, Suite 800, Dallas, TX 75201 within 30 days after execution of the Lease.

## 27. GENERAL PROVISIONS

**A. SECURITY INTEREST/SET OFF.** You grant Lessor a security interest, to the extent permitted by state law, in the loss proceeds of any vehicle insurance, service contracts or products financed in connection with this Lease and in any premium refunds for such insurance, service contracts or other products to secure performance of your obligations under this Lease. You grant Lessor the right to set-off amounts owed by you to Lessor against any amounts owed by Lessor to you without notice or demand except as required by applicable law.

**B. LIMITED POWER OF ATTORNEY.** You appoint us or our agent as your attorney-in-fact to do the following: (1) settle any insurance claim related to the Vehicle; (2) endorse your name on any check or draft we receive for damage or loss of the Vehicle; and (3) to sign your name to any title, registration or other similar documents related to the Vehicle. This power of attorney is coupled with an interest in the Vehicle and is not revocable.

**C. ADDITIONAL CREDITS AND AMOUNTS DUE.** Regardless of how the Lease ends, you will owe Lessor any unpaid fees and taxes, including any tax on what you owe because the Lease ends early, plus any amounts due because you breached your obligations under this Lease.  Lessor may cancel any optional insurance or service, maintenance, or other contracts that Lessor financed for you.  Lessor will give you a credit for any amount Lessor receives from such a cancellation, unless the GAP Waiver in Section 24 applies.

**D. ODOMETER STATEMENT.** You agree to maintain the Vehicle's odometer so that it is always accurate. You will provide us with an odometer certification at any time we request one. **Federal law requires you to give us a statement of the Vehicle's mileage in connection with a transfer of Vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.**

**E. NO WAIVER.** We do not waive our rights or remedies under this Lease by delaying or failing to exercise them at any time. Our acceptance of late or partial payments under this Lease will not constitute a waiver of our right to receive timely payment in full or any other rights.

**F. ASSIGNMENT. You have no right to assign any of your rights under this Lease or to sublet the Vehicle; Lessor can assign its interest in this Lease and the Vehicle without your consent.**  If the Lease is assigned by Assignee, a subsequent assignee may designate CCAP Auto Lease Ltd., or its trustee, as agent to hold title for the benefit of that subsequent assignee on the Vehicle's certificate of title and/or registration. Any subsequent Assignee will not be required to make repairs to the Vehicle, obtain insurance, or perform any service Lessor has agreed to perform under this Lease. You understand that you may not receive notice of any assignment of this Lease.

**G. CREDIT REPORTS.** You authorize us to obtain your credit report, credit score or other consumer reports from any consumer reporting agency now and during the term of this Lease, and to reinvestigate your credit for use in monitoring this Lease, collection of amounts owed under this Lease and extending or amending this Lease to the full extent permitted by law. You are also hereby notified that if you fail to fulfill the terms of your credit obligations under this Lease, a negative report regarding your credit may be submitted to each consumer reporting agency. Lessor may share credit, account and financial information with our affiliates and other third parties except to the extent prohibited by our policies or by law, including your instructions that must be followed under the Gramm-Leach-Bliley Act and state law.

**H. GOVERNING LAW.** This Lease is governed by, and will be interpreted in accordance with the laws of the state where the Dealer is located.

**I. ENFORCEABILITY.** If any provision of this Lease is found to be unenforceable, illegal, or void, the remaining provisions of this Lease will remain in full force and effect.

**J. INFORMATION DISCLOSURE.** Lessee hereby acknowledges, and when required by applicable data protection regulation expressly consents, to the disclosure of his/her personal data to other Santander Group companies, along with any relevant transactions-related information, if Lessor or its assignee determine it to be required by or advisable to comply with applicable law or internal policies, including, but not limited to (i) Santander Group´s Financial Crime Compliance internal policies, (ii) its legal obligations relating to the anti-money laundering and counter terrorism financing regulations and (iii) its regulatory reporting to the supervisory authorities.

## 28. COMMUNICATIONS WITH LESSEE

**A. CONSENT TO MONITOR AND RECORD PHONE CALLS.** To ensure that Lessee's inquiries are handled promptly, courteously, and accurately, some of the phone calls between you and us or any of our affiliates, agents, assigns and service providers, may be monitored and recorded by us and any of our affiliates, agents, assigns and service providers, to enhance service to you.  You consent to this monitoring and recording.

**B. SERVICING AND COLLECTION CALLS.** You agree that, in order for us to service this Lease or to collect any amounts you owe, Lessor may make calls and/or send text messages to you at any telephone number(s) that you have provided to us, now or in the future, including wireless telephone numbers that could result in charges to you.  The manner in which these calls or text messages are made to you may include, but is not limited to, the use of prerecorded/artificial voice messages and/or automatic telephone dialing system.  You further agree that in order for us to service this Lease or to collect any amounts you owe, that Lessor may send e-mails to you at any e-mail address you provide us or use other electronic means of communication to the extent permitted by law.

Lessee Initials: ___H.N.___ / Co-Lessee Initials:___N/A___

## 29. NOTICES

**NOTICE:** If you do not meet your Lease obligations, you may lose the Vehicle. **AK, OR and SD Notice:** If this Lease is for a consumer purpose, then this Lease is CONSUMER PAPER.

### THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.

**NOTICE TO MICHIGAN LESSEES:** The Early Termination Liability (Section 18) as determined by Lessor may be different than the actual cash value of the Vehicle as determined by the insurer of the Vehicle. Except to the extent that the GAP Waiver in Section 24 applies, Lessee is responsible for the amount by which the Early Termination Liability exceeds the proceeds from the insurer of the Vehicle.

Lessee's Initials ___N/A___ ✔    Co-Lessee's Initials ___N/A___ ✔

**ELECTRONIC CONTRACTING AND SIGNATURE.** You hereby agree that your electronic signature below signifies your intent to enter into this Lease, which shall be legally valid and enforceable in accordance with its terms (the "Electronic Contract"). Upon signing this Lease, you will receive a copy of this Lease, which shall not be considered an authoritative copy. The authoritative copy shall be the electronic copy stored in a document management system designated by us (the "Authoritative Copy"). Notwithstanding the foregoing, the Authoritative Copy may be converted into a paper contract by printing it and being marked by us as an original (the "Paper Contract"). Once such Paper Contract is created, it shall constitute the Authoritative Copy, and you acknowledge and agree that: (a) your signing of the Electronic Contract also constitutes issuance and delivery of the Paper Contract, (b) your electronic signature below, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (c) after such conversion, your obligations will be evidenced by the Paper Contract alone.

**THIS LEASE CONTAINS THE ENTIRE AGREEMENT BETWEEN YOU AND US.** No agreements exist between you and Lessor except as set forth in this Lease. The agreement between the parties may only be modified by a writing signed by you and Lessor, except that at the end of the original Lease Term the Lease may be extended by agreement at our discretion for a period not to exceed six (6) months. No course of performance will modify the agreement between the parties or constitute a waiver of any right under this Lease.

Lessee's Initials ___H.N.___ ✔    Co-Lessee's Initials ___N/A___ ✔

**NOTICE:** (1) BY SIGNING BELOW, YOU AGREE TO ALL THE PROVISIONS ON ALL PAGES OF THIS LEASE. (2) YOU ACKNOWLEDGE THAT YOU HAVE READ THE ENTIRE LEASE. (3) YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED A COMPLETELY FILLED-IN COPY OF THIS LEASE AND OF ANY OTHER AGREEMENTS, POLICIES OR CERTIFICATES THAT YOU SIGNED OR AGREED TO PURCHASE. (4) YOU AGREE THAT YOU HAVE READ THE ARBITRATION PROVISION ON THIS LEASE, INCLUDING THE METHOD FOR OPTING OUT, AND YOU AGREE TO ARBITRATE ALL CLAIMS IN ACCORDANCE WITH THE ARBITRATION PROVISION IN SECTION 26.

**NOTICE TO CONSUMER:** 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of this agreement.

## 30. SIGNATURES

### A. INDIVIDUAL LESSEE(S) SIGNATURE(S) – Complete for individual lease ONLY

X  N/A

X  N/A

Lessee Signature

Co-Lessee Signature

### B. BUSINESS LESSEE(S) SIGNATURE(S) – Complete for business lease ONLY

X  _TDM Inc. by Huntley Nero_    HUNTLEY  NERO    CFO    X  N/A

Lessee Signature    Authorized Signer Name & Title (Print)    Co-Lessee Signature

### C. LESSOR SIGNATURE AND ASSIGNMENT

By signing below, Lessor identified above agrees to the following: (1) Lessor accepts this Lease; (2) Lessor assigns all right, title and interest in this Lease and the Vehicle to CCAP Auto Lease Ltd. ("Assignee") under the terms of the Chrysler Capital Non-Recourse Master Dealer Agreement in effect as amended from time to time. Lessor acknowledges that Lessor is not an agent of Assignee or its servicer and that neither the Chrysler Capital Non-Recourse Master Dealer Agreement nor this assignment makes Lessor an agent of Assignee or its servicer.

X  _(signature)_    DAREAN MARSH    -Finance

Lessor Signature    Lessor Representative Name (Print)    Title

Non-Authoritative Copy

Lessee Initials: ___H.N.___ / Co-Lessee Initials: ___N/A___

# EXHIBIT "B"



Collateral Management Solutions
9750 Goethe Road | Sacramento, CA 95827
www.Vitu.com

## Chrysler Capital

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| **Account Number** | | **Financed Date** | 6/20/2024 |
| **Loan Number** | | **Perfected Date** | 7/3/2024 |
| **Branch** | | **Payoff Date** | |
| | | | |
| **Borrower 1** | INC, TD&H | **Dealer ID** | |
| **Borrower 2** | | | |
| **Borrower Address** | | **Dealer Address** | |

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | |
| **Lienholder** | CCAP AUTO LEASE LTD |
| **Lienholder Address** | PO BOX 961272 |
| | FORT WORTH, TX 761610272 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 1C6SRFFP8SN515752 | **Issuance Date** | 7/3/2024 |
| **Title Number** | | **Received Date** | 7/3/2024 |
| **Title State** | NC | **ELT/Paper** | ELECTRONIC |
| **Year** | 2025 | **Odometer Reading** | 0 |
| **Make** | RAM | **Branding** | |
| **Model** | | | |
| | | | |
| **Owner 1** | CCAP AUTO LEASE LTD | | |
| **Owner 2** | | | |
| **Owner Address** | PO BOX 961272 | | |
| | FORT WORTH, TX 761610272 | | |

**Printed:** Tuesday, September 2, 2025 10:37:00 AM PST

# EXHIBIT "C"

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA

In re:                                          Chapter

   TD&H, Inc.,                              Bky. No. 24-10392
   Debtor(s)

**STATE OF TEXAS**          )
                        ) ss.

**COUNTY OF DALLAS**     )     **AFFIDAVIT**

     I, __Gavin Douglas__ , a __Title Specialist__ of Santander Consumer USA Inc. dba Chrysler Capital as servicer for CCAP Auto Lease Ltd., declare under penalty of perjury that I have personal knowledge of the information set forth below, which is true and correct to the best of my knowledge, information, and belief.

     1.    This affidavit is based on the lease payment records of Santander Consumer USA Inc. dba Chrysler Capital as servicer for CCAP Auto Lease Ltd. as of September 2, 2025. These records are regularly maintained in the course of business and it is the regular practice to make and maintain these records. These records reflect the lease payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information. I maintain these records and regularly use and rely upon them in the performance of my duties.

     2.    Santander Consumer USA Inc. dba Chrysler Capital as servicer for CCAP Auto Lease Ltd. owns the following (the "Vehicle"): 2025 Ram 1500, VIN: 1C6SRFFP8SN515752.

     3.    $48,530.85 is the outstanding balance under the lease.

     4.    As of September 2, 2025, the amount of the option to purchase the Vehicle is $48,530.85 plus any other amounts due under the lease.

     5.    As of September 2, 2025, the account is past due for the months of 6/12/2025 through 8/12/2025, in the amount of $1,982.79.

     6.    $51,600.00 is the fair market value of the Vehicle.

     7.    No appropriate insurance has been verified.

     Further your affiant sayeth not.

Dated: __09/05/2025__

Subscribed and sworn to before me on this
__5th__ day of __September__ , 2025

Printed Name: __Gavin Douglas__
Title: __Title Specialist__
Creditor: Santander Consumer USA Inc. dba Chrysler Capital as servicer for CCAP Auto Lease Ltd.

Notary Public  Antwanette Crump
My commission expires:

ANTWANETTE L CRUMP
Notary Public, State of Texas
Comm. Expires 05-07-2029
Notary ID 133088790

# EXHIBIT "D"

**N.A.D.A. Official Used Car Guide**
**Automated Vehicle Valuation**
Tuesday, September 2, 2025

---

| | | | |
|---|---|---|---|
| **Guide Edition:** | September 2025 | **Region:** | Southeastern |
| **Vehicle:** | 2025   RAM | | |
| | Ram 1500 | **VIN:** | 1C6SRFFP8SN515752 |
| | Crew Cab Bighorn/Lone Star 4WD 3.0L I6 Turbo | **Weight:** | 5,083 |
| **Mileage:** | 16,800 | **MSRP:** | $51,535.00 |

| | | | | | |
|---|---|---|---|---|---|
| **Base Retail:** | $51,850.00 | **Base Trade:** | $44,850.00 | **Base Loan:** | $40,375.00 |

---

**Accessory Adjustments:**

| | (Retail) | (Trade) | (Loan) |
|---|---|---|---|
| 3.0L I6 Turbo Engine | (w/body) | (w/body) | (w/body) |
| Aluminum/Alloy Wheels | (w/body) | (w/body) | (w/body) |
| Fog Lights | (w/body) | (w/body) | (w/body) |
| Power Driver's Seat | (w/body) | (w/body) | (w/body) |

---

| | | | |
|---|---|---|---|
| **Mileage Adj.:** | ($250.00) | **(Trade) Accessory Adj.:** | $0.00 |

---

**Total N.A.D.A. Official Used Car Values**

| | | |
|---|---|---|
| **Retail:** $51,600.00 | **Trade:** $44,600.00 | **Loan:** $40,125.00 |

---

All NADA Values Reprinted With Permission Of
N.A.D.A. Official Used Car Guide Company  Copyright NADASC 1996